500 So.2d 858 (1986)
Rosemary FRASIER
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, State of Louisiana, et al.
No. 85 CA 1287.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
*859 Clay J. Calhoun, Jr., New Orleans, for plaintiff-appellant Rosemary Frasier.
Larry S. Bankston and Charles M. Raymond, Baton Rouge, for defendant-appellee State of La., et al.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
SAVOIE, Judge.
This is a tort action for medical malpractice and failure to obtain informed consent. The trial court held that plaintiff failed to prove her case by a preponderance of the evidence and rendered judgment in favor of defendant. Plaintiff has appealed.
Plaintiff, a sixty-two year old mother of eight, has had a history of mental illness dating back to 1973. Her history of hospitalizations and the respective diagnosis of each are as follows:
11/02/73  Southeast State Hospital (Schizophrenia Paranoid)
12/10/73  Southeast State Hospital (Schizophrenia Paranoid)
01/17/74  Southeast State Hospital (Schizophrenia Paranoid)
05/23/75  Southeast State Hospital (Schizophrenia Paranoid)
07/21/76  Charity Hospital New Orleans (Tardive Dyskinesia [T.D.] and Chronic Schizophrenia [catatonic])
08/30/76  (Discharge) Charity Hospital New Orleans (Pyschotic Depression)
10/28/76  Charity Hospital New Orleans (Involutional Pyschosis and T.D.)
12/14/76  Terrebonne Mental Health Center (Chronic Depression)
02/09/77  Terrebonne Mental Health Center (Depression and Dyskinesia)
02/11/77  East Louisiana State Hospital (Schizophrenia)
07/06/78  East Louisiana State Hospital (Chronic Undifferentiated Schizophrenia)
09/15/78  East Louisiana State Hospital (Chronic Undifferentiated Schizophrenia and T.D.)
11/25/80  Charity Hospital New Orleans (Chronic Schizophrenia Catatonic type)
06/07/81  Charity Hospital New Orleans (Manic Depressive and T.D.)
This suit concerns the medical treatment received by plaintiff at East Louisiana State Hospital in Jackson on three separate *860 occasions from 1977 to 1980. The record reveals that plaintiff was admitted to East Louisiana State Hospital on February 10, 1977, for about a one month stay, again on June 12, 1978, for another one month stay and finally on September 5, 1978, until her discharge in September, 1980.
Plaintiff brought suit in 1980 against the State of Louisiana for the alleged negligence associated with the medical care and treatment rendered at East Louisiana State Hospital during the years 1977-1980. Plaintiff alleges that she was "misdiagnosed as a schizophrenic and negligently subjected to continuous sustained therapy with antipsychotics and other medications against her will in disregard of a developing condition of tardive dyskinesia." Tardive dyskinesia is an involuntary movement disorder that may appear with the use of antipsychotic drugs. Plaintiff contends that these acts of defendant aggravated her disorder, prolonged her hospitalizations, and made the tardive dyskinesia irreversible. The trial court rendered judgment in favor of defendant dismissing plaintiff's claims at her costs, and from which judgment this appeal was timely filed.
In her assignments of error, plaintiff alleges that the trial court clearly erred in:
1. the determination of the appropriate medical standards involved;
2. ruling that the actions or omissions of defendant's physicians in the diagnosis and treatment of appellant in her first admission to East Louisiana State Hospital had prescribed;
3. finding that the evidence failed to establish that defendant was negligent in the diagnosis of plaintiff as schizophrenic;
4. finding that the defendant's administration of medications was reasonable, prudent and skillful;
5. finding that the plaintiff's psychiatric condition, itself, provided a life-threatening effect;
6. finding that the evidence failed to show by a preponderance that other prudent physicians would have acted in anyway different from that of defendant;
7. finding that the question of informed consent was moot;
8. not finding that defendant's actions and omissions in the administration of medications were a substantial factor in (a) causing the prolonged and agonizing hospitalizations of plaintiff, (b) causing the aggravation of the condition of tardive dyskinesia, (c) substantially reducing the chances of reversing the now permanent condition of tardive dyskinesia; and
9. failing to return a judgment for plaintiff in the amount of $500,000.00.
In a medical malpractice suit based on the negligence of a physician, the plaintiff must meet the burden of proof defined by LSA-R.S. 9:2794 as succinctly set forth in White v. McCool, 395 So.2d 774, 776 (La. 1981), as follows:
The pertinent statutory provision, enacted in 1975, places upon the plaintiff in a medical malpractice action the burden of proving `the degree of care ordinarily practiced by physicians and dentists within the involved medical specialty,' R.S. 9:2794(A)(1); `that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill,' R.S. 9:2794(A)(2); and `that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care plaintiff suffered injuries that would not otherwise have been incurred,' R.S. 9:2794(A)(3) ... (Footnote omitted).
Accordingly, we choose to treat this matter in the following manner:
1) What was the degree of knowledge or skill possessed or degree of care ordinarily practiced by physicians (psychiatrists), i.e., the medical standard, during the years 1977-1980? (Assignment of Error No. One).
2) Did the defendant either lack this degree of knowledge or skill or fail to exercise reasonable care and diligence, along with his best judgment in the application *861 of that skill? (Assignments of Error Nos. Three, Four and Six).
3) Did plaintiff suffer injuries from the acts of the defendant that she would not have otherwise incurred? (Assignment of Error No. Eight).
4) Did defendant breach its duty of obtaining the informed consent of plaintiff? (Assignments of Error Nos. Five and Seven).
5) Had plaintiff's cause of action, if any, for her first admission to East Louisiana State Hospital prescribed? (Assignment of Error No. Two).

I. Medical Standard: Assignment of Error No. 1
Plaintiff contends that the trial court erred in the determination of the appropriate medical standards involved. In its written reasons for judgment, the trial court, without expressly setting forth the appropriate medical standard, simply stated that "the assessment by the doctors was reasonable, prudent and within the standard of care to which the defendant was subject at that time" and that "the treatment given was within the standard allowable." Specifically, plaintiff is alleging that during the years 1977-1980, defendant did not possess the body of knowledge or degree of skill existing in the field of psychiatry concerning the diagnosis and treatment of manic depression and schizophrenia and the diagnosis and treatment of tardive dyskinesia.[1]
In a medical malpractice action, opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.), writ denied, 435 So.2d 431 (La.1983). Testimony from nearly all of the medical experts conclusively demonstrate that the symptoms of manic depression and schizophrenia are continuously overlapping and that it is a common error to confuse the diagnosis between the two. In evaluating the degree of knowledge in the psychiatric community prevalent at the time, testimony was directed to the second edition of the American Psychiatric Association's diagnostic and statistical manual (DSM-II) which was admittedly a relied upon source of information at the time Mrs. Frasier was treated, i.e., 1977-1980. At the time of trial, DSM-II had been replaced with a third edition DSM-III which the evidence shows to contain more specific information and additional criteria for distinguishing between schizophrenia and manic depression. Plaintiff contends that the information contained in DSM-III was known or readily available during the years 1977-1980, and that this information represented the accepted medical standard at that time.
After carefully examining the record, we find no merit to plaintiff's argument. Although the testimony of the experts often conflicted, we find that the additional criteria contained in DSM-III were not generally known or generally accepted as the standard during the years immediately preceding its publication. In fact, we believe that one of the underlying purposes of DSM-III was to attempt to clear up the much confusion surrounding the diagnosis between the two. An example of this confusion is found in plaintiff's 1980 diagnosis of "schizoaffective mixed type" which is applied to patients who have evidence of manic depression and schizophrenia in concert. Dr. Philip Cenac testified that according to 1985 research, it "may be an imaginary diagnosis." The record is replete with evidence that based on the body of knowledge existing in 1977-1980 or at present, it was a common error to confuse the diagnosis between manic depression and schizophrenia.
*862 Additionally, plaintiff alleges that the applicable medical standard for the management of tardive dyskinesia was the immediate withdrawal of neuroleptics (antipsychotics) as expressed in the task force report of the American Psychiatric Association published in December 1979. We find plaintiff's contention without merit.
A careful reading of the report discloses qualifying words, such as "the available data suggests" that tardive dyskinesia is often reversible "if neuroleptics are withdrawn..." and "the theoretical treatment of choice is discontinuation of neuroleptics...." In the New England Journal of Medicine, July 5, 1973 Vol. 289, pg. 20, 23, it is stated that "it seems reasonable to withdraw such drugs entirely once the condition is diagnosed. On the other hand, with current lack of information it is impossible to tell whether or not continued antipsychotic medication will aggravate the condition." (Emphasis ours). It is clear from the record that the withdrawal of antipsychotic drugs was a suggested practice at the time, but was by no means the only accepted practice at that time.

II. Reasonable Care: Assignments of Error Nos. 3, 4 & 6
We must next determine whether defendant "lacked the degree of knowledge or skill or failed to exercise reasonable care and diligence, along with his best judgment in the application of that skill." LSA-R.S. 9:2794(A)(2). Specifically, plaintiff alleges that defendant negligently misdiagnosed plaintiff and thereafter negligently administered medications.

Diagnosis
Plaintiff contends that based on the medical standard at the time, defendant was negligent in diagnosing plaintiff as schizophrenic rather than manic depressive. We find no merit to this argument. Based on the body of knowledge prevailing at that time, i.e., 1977 through 1980, we find that defendant's diagnosis of plaintiff as schizophrenic was not negligent.
Diagnostic error by a physician is not malpractice per se. Diagnosis is an act of professional judgment and, in case of misdiagnosis, malpractice exists only if it results from the physician's failure to exercise the standard or degree of care in diagnosing which would have been exercised by members of his profession in good standing in his locality under similar circumstances. Borne v. Brumfield, 363 So.2d 79 (La.App. 4th Cir.1978), and Tillman v. Lawson, 417 So.2d 111 (La.App. 3rd Cir.1982).
As discussed above, the symptoms of schizophrenia and manic depression are overlapping. Physicians testified that making a differential diagnosis between the two is difficult and often confused. In fact, the record shows that it is possible for a person to suffer from both manic depression and schizophrenia at the same time. We find that it is difficult, even now, with all the accuracy of hindsight to say that plaintiff was not schizophrenic. We find that defendant was reasonable in diagnosing plaintiff as schizophrenic in light of the body of knowledge existing in the mental health community at that time.

Treatment
In its written reasons for judgment, the trial court stated that "[t]he evidence ... failed to establish any negligence in administration of medication or that the defendant's treatment was not a reasonable, skillful and prudent treatment under the circumstances." The trial court also stated:
Based upon the record before [the] Court, the Court has no alternative but to conclude that considering plaintiff's life-threatening condition, the treatment of plaintiff, including the administration of the medication that she received was reasonable and skillful and prudent. Though there may be some dispute as to how each individual doctor might have treated for this disorder, the treatment given was within the standard allowable and therefore not negligent. In fact, the evidence failed to show by a preponderance that other prudent physicians would have acted in any way different from that of the defendant. It is particularly noted that plaintiff's treating physician, following her treatment by the defendant, *863 has continued to use the same type of medication that plaintiff complains of in this action.
Although we agree with the trial court's finding generally, we do find one instance in which defendant's treatment and administration of medications was not reasonable, prudent and skillful. The record shows that defendant administered Thorazine to plaintiff on February 26, 1977, which resulted in plaintiff suffering an allergic reaction to the drug. Yet on October 30, 1978, plaintiff was again administered Thorazine in complete disregard to her noted allergy to the drug, resulting in another allergic reaction. We find that defendant failed to use reasonable care and diligence in this particular instance and fell below the standard of care required of a physician.
However, we must also find that plaintiff's cause of action for this act of negligence has prescribed pursuant to LSA-R.S. 9:5628(A) which provides in pertinent part:
A. No action for damages for injury or death against any physician, ... arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
The giving of Thorazine to plaintiff was noted on her chart as was her reaction thereto. The record is devoid of any evidence that plaintiff was not fully aware of what she was given, i.e., Thorazine, and that the reaction suffered was from the administration of Thorazine. We find nothing in the record to constitute a basis for an extension of the prescriptive period based on the doctrine of Contra Non Valentem. Plaintiff filed suit in 1980, more than one year from the negligent act and therefore, pursuant to LSA-R.S. 9:5628, plaintiff's cause of action has prescribed.

III. Causation: Assignment of Error No. 8
Plaintiff contends that the trial court clearly erred in not finding that defendant's actions and omissions in the administration of medications were a substantial factor in causing the prolonged and agonizing hospitalizations of plaintiff, causing the aggravation of the condition of tardive dyskinesia, and substantially reducing the chances of reversing the now permanent condition of tardive dyskinesia. We find no merit in this argument.
Plaintiff has the burden of proving her case by a preponderance of the evidence, i.e., that it is more likely than not that the damages were a result of the treatment. After a careful review of the record, we cannot say that the trial court erred in finding that plaintiff failed to meet this burden. Dr. Silva testified that antipsychotics can be used for treatment of both schizophrenia and mania. The literature on tardive dyskinesia presented by both parties shows that it is uncertain whether the continued use of antipsychotic drugs will exacerbate the condition or decrease the chances of reversibility. Generally all the physicians agreed that it is impossible to determine at what point in time plaintiff's condition became irreversible, if in fact it is irreversible. Plaintiff was diagnosed as having tardive dyskinesia over a year prior to her first admission to East Louisiana State Hospital and, therefore, it is possible, if not probable, that plaintiff's condition was permanent before entering East Louisiana State Hospital. Accordingly, we cannot say that it is more likely than not that plaintiff suffered injuries that would not otherwise have been incurred.

IV. Informed Consent: Assignments of Error Nos. 5 & 7
By these assignments of error, plaintiff argues that the court erred in finding that plaintiff's condition was life *864 threatening and that therefore, the question of informed consent was moot. LSA-R.S. 28:52(H) provides:
Voluntary patients may receive medications or treatment, but no major surgical procedures or electroshock therapy may be performed without the patient's written and informed consent. If it is determined by the director of the treatment facility that a voluntary patient has become incapable of making an informed consent for such procedure, he shall apply to a court of competent jurisdiction for a determination of the patient's specific incompetence to give informed consent for the procedure. If the director in consultation with two physicians determines that the condition of a voluntary patient who is incapable of informed consent is of such critical nature that it may be life-threatening unless major surgical procedures or electroshock treatment is administered, the emergency measures may be taken without the consent otherwise provided for in this Section.
Accordingly, the trial court was correct in its holding that "once a diagnosis of schizophrenia with a life-threatening effect was made, the question of consent became moot." We find that plaintiff's condition was in fact life-threatening during that period in which she refused to eat and take her medication.
We also find that plaintiff on each of her admissions to East Louisiana State Hospital signed a valid consent form pursuant to LSA-R.S. 28:52(F). This meets the requisites for the proper administration of medications during her three stays. LSA-R.S. 28:52(H) requires additional informed consent for "major surgical procedures," not for the receiving of medications or treatment.
Finally, we find that defendant received informed consent of the plaintiff through her daughter on October 12, 1979, when the said daughter authorized a continued use of antipsychotic drugs. We do not find as alleged by plaintiff, that Dr. Keh's statement that tardive dyskinesia was permanent, constituted a material misrepresentation. In view of the medical standards existing at that time, coupled with the paucity of information about tardive dyskinesia, we conclude that Dr. Keh's statement to the daughter was her best judgment and an accepted medical position at that time. Additionally, we point out that even by today's standards, medical opinions differ as to whether tardive dyskinesia is in fact, permanent or temporary, reversible or irreversible, or a combination of these. For the foregoing reasons, we find that there was informed consent.

V. Prescription: Assignment of Error No. 2
Finally, plaintiff contends that the trial court erred in ruling that the actions or omissions of defendant's physicians in the diagnosis and treatment of appellant in her first admission to East Louisiana State Hospital had prescribed. Our finding that no acts of negligence occurred in plaintiff's first admission to East Louisiana State Hospital pretermits any discussion of this assignment of error.
For the above and foregoing reasons, we affirm the judgment of the trial court with all costs of this appeal to be paid by the appellant.
AFFIRMED.
NOTES
[1] Medical experts described Manic Depression as a mood disorder, and Schizophrenia as a thought disorder.