560 So.2d 843 (1990)
Connie D. YOUNG, Plaintiff-Appellant,
v.
John COLLIGAN, M.D., Defendant-Appellee.
No. 88-1202.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Rehearing Denied April 23, 1990.
Writ Denied June 29, 1990.
*844 R. Ray Orrill, Vicki A. Williams, New Orleans, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, Richard Cappel, Lake Charles, for defendant-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
LABORDE, Judge.
This is a medical malpractice action. The plaintiff, Connie D. Young, filed suit against defendant, John Colligan, M.D., for his alleged negligence in not performing a pregnancy test on her before she underwent an abdominal hysterectomy.[1] Pursuant to LSA-R.S. 40:1299.47, et seq., a medical review panel was convened. The medical review panel assigned to the plaintiff's claim found the following:
"... the evidence does support the conclusion that JOHN D. COLLIGAN, M.D., failed to meet the applicable standard of care as charged in the complaint, and it is further the opinion of this Medical Review Panel that the conduct complained of was a factor of the resultant damages.
a) Any disability and the extent and duration of the disability: none, and
b) any permanent impairment and the percentage of the impairment: none."
An addendum to the medical review panel's opinion stated as follows:
"It is the opinion of this Panel that the only standard of care violated was the failure to do a pregnancy test which breach resulted in no damage or impairment to the plaintiff.
It is this Panel's further opinion that although a pregnancy test is not mandatory before each and every hysterectomy *845 to meet the nationwide standard of care, given the history in this case a pregnancy test was called for."
A jury trial of this matter was held over a five day period. After deliberations, the jury returned with a verdict in favor of the defendant and against the plaintiff. Specifically, the jury answered "no" to Interrogatory 1 on the verdict sheet which read:
"WAS DR. JOHN D. COLLIGAN GUILTY OF PROFESSIONAL NEGLIGENCE WHICH WAS A CAUSE IN FACT OF INJURIES TO MS. CONNIE YOUNG, RESULTING FROM HER BEING SUBJECT TO ELECTIVE SURGERY WHEN SHE WAS PREGNANT."
Subsequent to the jury verdict, the plaintiff filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. This motion was denied by the trial judge. The plaintiff now appeals the decision of the trial court. We affirm.

FACTS
On September 27, 1985, Ms. Young visited the office of Dr. Colligan, an obstetrician/gynecologist. She complained of pain in the lower abdomen, pain in the back area, vaginal pain, some swelling and bloating and very heavy flooding during menstruation. She also informed Dr. Colligan that her last two menstrual periods had been late, both taking six weeks. Because the plaintiff noted on her records that she had not used any form of contraception in over a year, the doctor asked her if she intended to become pregnant. The plaintiff answered this in the negative, stating that her partner was sterile. Dr. Colligan performed a physical examination of the plaintiff and his diagnosis was that she possessed a retroverted uterus. He advised the plaintiff that, in order to correct this condition, she would have to undergo either a surgical suspension of the uterus or removal of the uterus through an abdominal hysterectomy.
Ms. Young decided to undergo the abdominal hysterectomy, and she was admitted to Humana Women's Hospital of Lake Charles on October 9, 1985, for that procedure. Prior to surgery, she informed Dr. Colligan that she had not had her period and that it had been eight weeks since her last one. On October 10, 1985, the plaintiff was prepared for surgery and Dr. Colligan commenced the hysterectomy procedure. When Dr. Colligan opened the plaintiff's abdomen, he found what he determined to be a pregnant uterus. Deciding to abort the surgery, Dr. Colligan closed the incision.
The evidence establishes that after the plaintiff was discharged from the hospital, she had no other dealings with Dr. Colligan. It also establishes that she subsequently had the pregnancy terminated and eventually had the hysterectomy performed by a Dr. E.R. Puig.

NEGLIGENCE OF DR. COLLIGAN
The plaintiff argues that the jury committed manifest error in its finding that Dr. Colligan was not negligent in failing to perform a pregnancy test on her before she underwent the hysterectomy procedure. The plaintiff also contends that in light of the jury's erroneous findings, the trial judge was required to grant her motion for judgment notwithstanding the verdict or a new trial, and the refusal to do so amounted to error.
The plaintiff's burden of proof in medical malpractice actions is set out in LSA-R.S. 9:2794. Under that article, the plaintiff must prove: (1) the degree of skill and care ordinarily possessed and exercised by physicians within the defendant's speciality; (2) that the defendant either lacked that skill or failed to use that care; and (3) that as a proximate result of this lack of skill or care the plaintiff suffered injuries that would not otherwise have been incurred. Fox v. Our Lady of Lourdes Regional Medical Center, 550 So.2d 379 (La. App. 3d Cir. 1989). It is also important to note that the jurisprudence has held that the opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether the defendant physician possessed the requisite degree of knowledge or skill, or failed to *846 exercise reasonable care and diligence. Frasier v. Department of Health and Human Resources, 500 So.2d 858 (La.App. 1st Cir.1986); Steinbach v. Barfield, 428 So.2d 915 (La.App. 1st Cir.), writ denied, 435 So.2d 431 (La.1983).
The plaintiff claims that the symptoms she possessed indicated to her that she might be pregnant, and further claims that she told the defendant, during the office visit, that the symptoms were similar to those that she experienced when she had been pregnant in the past. These symptoms included sore and tender breasts, a marked weight gain and a late period. She also alleges that she expressed her confusion over these symptoms, in light of her partner's medically-proven sterility. The plaintiff contends that these symptoms should have prompted the defendant to perform a pregnancy test. Moreover, the plaintiff argues that neglecting to perform a pregnancy test before performing a hysterectomy, when the defendant knew, immediately prior to the procedure, that the plaintiff had not had her period for eight weeks, amounts to a breach of the standard of care that proximately caused the plaintiff to incur needless medical expenses, permanent scarring and emotional upset.
At trial, the only expert testimony the plaintiff offered into evidence to establish the standard of care in this case was the medical review panel's opinion. This is permitted under LSA-R.S. 40:1299.47(H), which dictates that:
"Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness...."
As was previously pointed out, the medical review panel found that although a pregnancy test is not required before every hysterectomy, in the plaintiff's case it was warranted, and accordingly the defendant breached the standard of care in not performing one on the plaintiff.
The plaintiff additionally relies on the cross-examination of the defendant to establish that he breached the standard of care. The defendant testified that he was suspicious that the plaintiff might be pregnant and that his suspicion increased when he found out that, prior to the hysterectomy procedure, the plaintiff had gone eight weeks without having her period. The plaintiff also points out in her brief that Dr. Colligan admitted on several occasions that his actions in not performing the pregnancy test were below the standard of care. However, we find it in the interest of fairness to mention at this point that the breach the defendant admitted to was not in failing to perform a pregnancy test, but rather, in the result of taking a patient to surgery and then finding out she is pregnant. This distinction will take on greater meaning when we examine the defendant's argument.
In response to the plaintiff's allegations, the defendant contends that during the office visit he became suspicious that the plaintiff might be pregnant, but that the plaintiff was successful in convincing him that she was not pregnant. He relates that the plaintiff's history and objective symptoms, coupled with her insistence that she was not pregnant, persuaded him that a pregnancy test was not necessary. The factors which weighed heavily in Dr. Colligan's decision not to perform the test were: (1) that the plaintiff's sexual partner had been medically confirmed as being sterile; (2) that the partner had no children of his own; (3) that the plaintiff and her partner had engaged in unprotected intercourse for approximately a year with no complications; and (4) that in the past, the plaintiff had been very fertile and would become pregnant shortly after discontinuing contraception. The defendant acknowledges that the plaintiff did inform him that her period was late, and that this can be a classic symptom of pregnancy; however, in this case, the defendant did not find this information to be indicative of pregnancy because the plaintiff had had a history of late periods. The defendant specifically denies *847 that the plaintiff ever discussed the tenderness of her breasts or her rapid weight gain with him.
Dr. Colligan concedes that his index of suspicion increased when he spoke to the plaintiff in the hospital and she related that she had not had her period for eight weeks. He claims that he asked the plaintiff if she thought she might be pregnant and the plaintiff replied that she knew the symptoms of pregnancy and was certain that she was not pregnant. She reiterated that her partner was medically confirmed to be sterile. At trial, the defendant testified that when he asked the plaintiff whether the pregnancy could have been caused by another individual, she became quite indignant, and emphatically denied that this could be possible.
In his trial testimony, the defendant conceded that to discover for the first time in the operating room that a hysterectomy patient is pregnant is a breach of the standard of care. However, the defendant contends that this unfortunate incident occurred as the result of the plaintiff providing him with misleading or inaccurate information. The defendant asserts that the failure to perform a pregnancy test in this case was not a breach of the standard of care. The defendant maintained throughout his testimony at trial that the misleading information provided to him by the plaintiff, together with her extreme conviction that she was not pregnant, satisfied him that a pregnancy test was not necessary.
To establish that there was no breach of the standard of care in this case, the defendant offers the expert testimony of Dr. Max Miller. Dr. Miller, who was a member of the medical review panel that reviewed the plaintiff's case, stated that he did not entirely agree with the decision reached by the panel, but that he signed the opinion as, in his own words, a "dissenter." Dr. Miller testified that given the history that the plaintiff related to the defendant, the defendant was justified in not performing a pregnancy test. He stated:
"... [w]ith the history which I related earlier of theof her saying that her boyfriend was sterile, that they had lived together and been sexually active for a year without contraceptives, and that she had not been exposed to pregnancy in any other manner, if you put all of those things together, you would have to assume clinically that there would be no indication for a pregnancy test, because there would be no way she could have become pregnant, taking a sterile husband, no exposure to any other possible pregnancy."
Dr. Miller concluded his testimony by pointing out that there is no national standard for performing a pregnancy test before a hysterectomy.
We have thoroughly reviewed the testimony in this case and find that the jury was not clearly wrong in deciding that the plaintiff failed to meet her burden of proving that the defendant breached his standard of care. As a reviewing court, we must give great weight to the factual conclusions reached by the trier of fact and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though this court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Simar v. Hartford Fire Insurance Co., 483 So.2d 196 (La.App. 3d Cir.), writ denied, 485 So.2d 65 (La.1986). "The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter at 724. As we find no manifest error in the decision of the jury, we need not concern ourselves with the plaintiff's arguments regarding the trial judge's refusal to grant the motion for judgment notwithstanding the verdict or new trial.

THE SURPRISE TESTIMONY OF DR. MILLER
The plaintiff contends that the trial judge committed manifest error in failing to grant a new trial on the grounds that the testimony of Dr. Max Miller constituted surprise which prejudiced the plaintiff. *848 Dr. Miller, testified at trial that he disagreed with the opinion of the medical review panel insofar as it determined that the defendant breached the standard of care in not performing a pregnancy test. The plaintiff asserts that this was testimony which she could not have anticipated and was therefore truly "surprise" testimony, which warranted a new trial.
We find no merit in this contention. LSA-R.S. 40:1299.47(H) specifically provides that any member of the medical review panel may be called by either party as a witness. There is no evidence to suggest that the plaintiff did not have access to witnesses who could refute the testimony of Dr. Miller. See Joseph v. Allstate Insurance Co., 256 So.2d 837 (La.App. 3d Cir.1972). The ordering or denying of a new trial is a matter vested within the sound discretion of the trial judge, and his ruling thereon will not be disturbed unless it clearly appears that he has abused his discretion. Miller v. Chicago Insurance Co., 320 So.2d 134 (La.1975). We find no abuse of discretion in the trial judge's refusal to grant a new trial.
For the foregoing and assigned reasons, we affirm the decision of the trial court. The plaintiff is cast for all costs.
AFFIRMED.
NOTES
[1] The plaintiff raised a second cause of action in her petition concerning the defendant's alleged negligence in causing her to undergo an abortion procedure. The trial court's decision on this second cause of action has not been appealed and, therefore, will not be discussed in this opinion.