KNOLL, Judge.
This appeal questions the trial court’s judgment finding no negligence or breach of contractual guarantee on the part of an obstetrician/gynecologist who performed an unsuccessful tubal ligation which resulted in a pregnancy and birth of a healthy child.
FACTS
The record before us includes testimony, documentary evidence, and a stipulation of facts which reveal the following. Dr. Lynn J. Brouillette, a board certified obstetrician/gynecologist, performed a tubal ligation on Patricia Carter on August 30, 1982, which failed to prevent a subsequent pregnancy and birth of her fourth child on May 5, 1986.
On May 6, 1986, Dr. Brouiilette performed a second tubal ligation on Patricia. This tubal ligation was also unsuccessful, and Patricia became pregnant and delivered her fifth baby on April 28, 1989. The baby was healthy and normal. Only the 1986 tubal ligation is at issue in this case.
She and her husband, James, filed a complaint with the Commissioner of Insurance. A medical review panel consisting of three obstetricians/gynecologists concluded that Dr. Brouillette had met the appropriate standard of care in his treatment of Patricia. Thereafter, the Carters filed suit on June 19, 1990, praying for damages incurred through alleged negligence and breach of contractual obligations in the 1986 sterilization which resulted in the wrongful conception or pregnancy. After a trial on the merits, the trial court rendered written reasons finding that the Carters failed to prove: negligence; medical treatment below an acceptable level of care; or breach of guarantee. The trial court signed the judgment on October 10, 1991.
From this judgment, the Carters appeal claiming the trial court erred in finding no negligence and no breach of guarantee. We affirm..
DR. BROUILLETTE MET APPROPRIATE STANDARD OF CARE
The Carters claim that Dr. Brouillette fell below the appropriate standard of care in his performance of the second tubal ligation on Patricia. However, the record shows that evidence of a substandard medical procedure is woefully lacking.
LSA-R.S. 9:2794 requires that the Carters must prove: 1) the degree of skill and care ordinarily possessed and exercised by physicians within the defendant’s specialty; 2) that the defendant either lacked that skill or failed to use that care; and 3) that as a proximate result of this lack of *224 skill or care the plaintiff suffered injuries that he would not otherwise have incurred. Young v. Colligan, 560 So.2d 843 (La.App. 3rd Cir.1990), writ denied, 565 So.2d 452 (La.1990). In medical malpractice cases, opinions of expert witnesses who are members of the medical profession qualified to testify on the subject are necessary to determine whether the defendant physician possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Young, supra.
The Carters did not present any expert testimony in support of their position that Dr. Brouillette did not meet the appropriate standard of care. Conversely, four board certified obstetricians/gynecologists testified by deposition, namely, Dr. Timothy M. Hart, Dr. Oscar Lee Berry, Jr., and Dr. Marsha L. Friedrich, all who served on the medical review panel and had reviewed operation reports, pathology reports, and depositions in forming their opinions of plaintiffs’ case, and Dr. Harry J. Mobley, who had assisted Dr. Brouillette in the 1986 tubal ligation.
The record shows that in the 1982 surgery, Dr. Brouillette performed a bilateral distal fimbriectomy, a procedure in which he removed the fimbriated end of the fallopian tube. This procedure, however, failed to prevent Patricia’s fourth pregnancy. Thus, Dr. Brouillette performed a second surgical procedure in 1986. In this bilateral distal salpingectomy, as confirmed by the pathology report, Dr. Brouillette removed 2.5 centimeters of the right and 6.7 centimeters of the left fallopian tubes, leaving virtual stumps.
The record shows that a tubal ligation procedure consists of surgical removal of a portion of the fallopian tube, followed by closure of the end with an absorbable suture or ligature, as was done in the present case. The second portion of the surgical procedure, which lies outside of the surgeon’s control, is the healing and scarring of the ends of the fallopian tubes. The record reveals that tubal sterilizations are subject to failure due to re-cannulization, i.e. regeneration of an opening, even in the absence of negligence. Although the Carters in brief “assume” that the reason for the failure of the second tubal ligation is failure to remove the fimbriated ends, the record belies this. Instead, the record clearly shows that re-cannulization of Patricia’s fallopian tubes occurred.
All four experts testified that Dr. Brouil-lette possessed the skill as an obstetrician/gynecologist to perform the tubal ligation in question; that he performed the surgery well and in accordance with the appropriate standard of care; that he was not negligent; that he removed large portions of Patricia’s right and left fallopian tubes; that his surgical procedure and technique did not contribute to the failure of the procedure; and that all methods of tubal ligation have an inherent failure rate which disallows a guarantee of success.
The lack of success of Patricia’s tubal ligation is indeed unusual. However, Dr, Brouillette’s surgical procedure clearly met acceptable standards. In fact, the record evidences that Patricia’s own healing, scarring, and regenerative process, over which Dr. Brouillette had no control, caused the failure of the 1986 tubal ligation procedure.
NO GUARANTEE OF STERILIZATION BY DR. BROUILLETTE
In support of their position, the Carters claim that Dr. Brouillette explained to Patricia at the time of the first tubal ligation that she still had a 1 out of 100 chance of becoming pregnant, but made no such disclaimer concerning the second procedure. Patricia testified that Dr. Brouillette stated that they had found and corrected the problem by removing a larger amount of her tubes. The Carters submit that this vague language constitutes a specific guarantee of successful surgery. However, Patricia admitted that the doctor never used the word “guarantee.” Also, Dr. Brouil-lette testified that he never told Patricia that she would not get pregnant again, and that he explained the failure rate which accompanies all tubal ligation procedures.
Further contradicting the Carters’ claim of a guarantee, the record shows the consent to sterilization and medical treatment forms admittedly signed by Patricia with *225 knowledge of their contents. The sterilization permit contains the following language: “It has been fully explained to me by Dr. Mobley/Brouillette that the purpose of this procedure is to make me sterile and that I will probably be unable to conceive or bear children after this time. However, Dr. Mobley/Brouillette has informed me that this result cannot be guaranteed nor warranted.” (Emphasis added.) Additionally, the consent to medical treatment form states that she understood the medical procedure which had been fully disclosed to her and that she “acknowledge^] that no warranty or guarantee has been made to me as to result or cure.” (Emphasis added.) Hence, our complete review of the record convinces us that the trial court did not err in finding that Dr. Brouillette never guaranteed the tubal ligation procedure. See Hutton v. Craighead, 530 So.2d 101 (La.App. 4th Cir.1988), writ denied, 533 So.2d 374 (La.1988).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to James and Patricia Carter.
AFFIRMED.