IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 30, 2002

## QUENTIN CAVNAR v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. 20200119     William Baker, Commissioner**

---

**No. M2002-00609-COA-R3-CV - Filed February 26, 2003**

---

This appeal involves the diagnosis and treatment of a person who was briefly hospitalized at Middle Tennessee Mental Health Institute. Following his release, the patient filed a claim with the Tennessee Claims Commission asserting that he had been misdiagnosed and that the staff had subjected him to mental abuse and torture. The Commission dismissed the patient's complaint after he failed to file a timely response to the State's Tenn. R. Civ. P. 12.02(6) motion to dismiss, and the patient has appealed. We have determined that the Commission properly dismissed the patient's claim, not only because of his tardy response but also because the response fails to state a claim upon which the Commission may grant relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Quentin L. Cavnar, Madison, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Laura T. Kidwell, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.

Quentin Cavnar is a fifty-year-old man who lives in Madison. On November 4, 2000, he went for what he called "an enjoyable ride." When he returned home, his wife called the police to report that Mr. Cavnar was shooting at streetlights and otherwise acting strangely. After the local authorities arrived with their mobile crisis unit, Mr. Cavnar sought to justify his actions by explaining that "the people who control the money, the power people, put cameras on the [street] lights, and . . . it was not right for people to be spying on other people." He also explained that he had unplugged his home telephone "because the phone was not safe" and because "people were able to listen to his conversation." Mr. Cavnar attributed his conduct to Valium withdrawal and self-imposed fasting.

Mr. Cavnar was thereafter admitted to Middle Tennessee Mental Health Institute ("MTMHI") in Nashville. He was diagnosed with Bipolar I disorder with manic and psychotic features. MTMHI kept him under observation for ten days and then released him with a prescription to control his behavior. After his release, Mr. Cavnar began to complain about his treatment while a patient at MTMHI. He insisted that he had been both misdiagnosed and ill-used at the hands of various MTMHI personnel. In July 2001 he wrote MTMHI a letter threatening to sue the State and demanding that his official diagnosis be changed to "physician-prescribed Valium addiction."

In October 2001, after MTMHI failed to accede to his demands, Mr. Cavnar filed a pro se claim with the Tennessee Claims Commission. The claim embodied essentially three grievances. First, Mr. Cavnar alleged that MTMHI employees exhibited willful and malicious conduct toward him during his hospitalization and that these employees should be disciplined or dismissed. Second, he alleged that MTMHI committed medical malpractice by misdiagnosing him as "paranoid schizophrenic" which, he says, has rendered him unemployable. Third, he alleged that MTMHI's actions inflicted emotional distress upon his wife and his children.

On December 17, 2001, the State filed a motion to dismiss Mr. Cavnar's complaint on two grounds – lack of subject matter jurisdiction and failure to state a claim. Mr. Cavnar did not file a timely response to the motion. However, on January 23, 2002, he filed a four paragraph response stating that he was unable to obtain legal representation and that he was under the impression that "the proper venue" for his action was the Commission. He stated that if the Commission lacked jurisdiction he "would sincerely appreciate direction as to what venue would be appropriate," and he concluded by disavowing that he was suing for negligent infliction of emotional distress on behalf of his wife. The Commission dismissed Mr. Cavnar's lawsuit, and he has appealed.

## II.
### MR. CAVNAR'S FAILURE TO TIMELY RESPOND TO THE MOTION TO DISMISS

Tenn. Code Ann. § 9-8-403(a)(1) (Supp. 2002) provides that matters such as Mr. Cavnar's suit shall be conducted under the Tennessee Rules of Civil Procedure where applicable, and otherwise they shall be conducted in accordance with the Commission's rules and regulations. Tenn. Comp. R. & Regs. 0310-1-1-.01(5)(c) (2001) requires parties opposing a motion before the Commission, other than a summary judgment motion, to file and serve a response to the motion no later than fifteen days from service of the motion. Under the Commission's rule, "[f]ailure to file a response shall indicate that there is no opposition to the motion." Where an opponent to a motion fails to respond, the Commission may permissibly grant the motion on its merits, if to do so appears otherwise appropriate. This court reviews the Commission's decision to dismiss a claim using the abuse of discretion standard. *Tuck v. State*, No. 03A01-9510-BC-00355, 1996 WL 310012 at *3-4 (Tenn. Ct. App June 11, 1996) (No Tenn. R. App. P. 11 application filed).

The Commission dismissed Mr. Cavnar's claim, in part, because he did not file a timely response to the State's motion to dismiss. While pro se litigants are entitled to fair and equal treatment as they pursue litigation, they are not excused from complying with applicable substantive and procedural law. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). The Commission allowed Mr. Cavnar thirty days to respond to the State's motion – fifteen days more than its rule required. To the

extent that the Commission took Mr. Cavnar's silence as indicating that he did not oppose the State's motion for dismissal, it was simply applying Tenn. Comp. R. & Regs. 0310-1-1-.01(5)(c) according to its express language. We find no abuse of discretion in the Commission's enforcement of its own rule.

### III.
### THE COMMISSION'S SUBJECT MATTER JURISDICTION

The Commission did not dismiss Mr. Cavnar's claim solely because of his procedural default. It also held that it lacked subject matter jurisdiction with regard to some of Mr. Cavnar's claims. We turn now to that determination. In the absence of a dispute regarding jurisdictional facts, issues of subject matter jurisdiction present questions of law that appellate courts review de novo. *Southwest Williamson County Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 876 (Tenn. Ct. App. 2001).

Subject matter jurisdiction involves a tribunal's power to adjudicate a particular controversy brought before it. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001). Tribunals such as the Commission derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *Dishmon v. Shelby State Cmty. College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). A tribunal's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000).

The State of Tennessee, as a general matter, enjoys immunity from suit. Tenn. Const. art. I, § 17 provides that the State may be held liable for monetary damages "only in such manner and in such courts as the Legislature may by law direct." In accordance with this constitutional mandate, the General Assembly created the Commission and has vested it with very specific subject matter jurisdiction to adjudicate certain defined contract and tort claims against the State. Tenn. Code Ann. §§ 9-8-301, -307 (1999 & Supp. 2002); *Hembree v. State*, 925 S.W.2d 513, 516 (Tenn. 1996). If Mr. Cavnar has a viable claim, it must fit squarely within the Commission's statutory jurisdiction.

The bulk of Mr. Cavnar's claim consists of allegations of willful and malicious conduct by MTMHI employees. For example, he alleges that MTMHI staff intentionally denied him phone privileges and that on more than one occasion the staff knowingly placed him in proximity of dangerous, mentally disturbed persons – at least once, so he says, for their personal amusement. He insists that MTMHI is "guilty of willful endangerment" by continuing to insist that he take prescribed medication that he believes is causing him adverse effects. Mr. Cavnar describes his treatment at the hands of MTMHI's staff generally as "mental abuse and torture."

Mr. Cavnar has not stated a claim based on the alleged willful or intentional conduct of MTMHI's employees, no matter how wronged he may feel. Tenn. Code Ann. § 9-8-307(d) specifically states that "[t]he State will not be liable for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain." Within its general

preserve of sovereign immunity, the State has not consented to be liable for its employees' wrongful intentional acts. *Shell v. State*, 893 S.W.2d 416, 421 (Tenn. 1995); *Lattimer v. Tennessee Dep't of Corr.*, No. M2000-03126-COA-R3-CV, 2002 WL 598558, at *3-4 (Tenn. Ct. App. April 17, 2002) (No Tenn. R. App. P. 11 application filed). Accordingly, the Commission correctly determined that it lacked subject matter jurisdiction with regard to Mr. Cavnar's claims predicated on what he believed were willful and malicious acts.

## IV.
### MR. CAVNAR'S PSYCHOLOGICAL DIAGNOSIS

Mr. Cavnar's most earnestly-pressed complaint against MTMHI involves his diagnosis. He insists that he was misdiagnosed as having "paranoid schizophrenia" and that this diagnosis has forced him to endure embarrassment professionally and socially.[1] He asks "[t]hat the Commission order the medical records of [his] at Middle Tennessee Mental Health Institute and related public records changed from the misdiagnosis of paranoid schizophrenia or bipolar disorder which was penciled in, to reflect the diagnosis of patient withdrawing from physician-prescribed Valium." He also asks for compensatory damages because the diagnosis has rendered him unable to find employment. As we understand the Claims Commission's order, it dismissed this portion of Mr. Cavnar's complaint for failure to state a claim.[2]

A motion to dismiss a complaint for failure to state a claim for which relief can be granted tests the legal sufficiency of the plaintiff's pleading. *Givens v. Mullikin*, 75 S.W.3d 383, 406 (Tenn. 2002); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The motion requires the court to review the complaint alone, *Mitchell v. Campbell*, 88 S.W.3d 561, 564 (Tenn. Ct. App. 2002), and to look to the complaint's substance rather than its form. *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002) or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Davis v. The Tennessean*, 83 S.W.3d 125, 127 (Tenn. Ct. App. 2001); *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5-6(g), at 254 (1999).

On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allegations in the complaint are true, and we must review the trial court's

---

[1] His complaint speaks in terms of "the stigma of the misdiagnosis of paranoid schizophrenia."

[2] This was not a subject matter jurisdiction question. Tenn. Code Ann. § 9-8-307(a)(1)(D) gives the Claims Commission jurisdiction to hear certain professional malpractice claims.

legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Stein v. Davidson Hotel*, 945 S.W.2d at 716. Pro se complaints for medical malpractice are not immune from dismissal for failure to state a claim. *See*, *e.g.*, *Moss v. Vanderbilt Univ. Med. Ctr.*, No. M1999-01321-COA-R3-CV, 2000 WL 1862840, at *4 (Tenn. Ct. App. Dec. 21, 2000) (No Tenn. R. App. P. 11 application filed) (dismissing the plaintiff's complaint).

Tenn. R. Civ. P. 8.01 requires plaintiffs to set forth a short and plain factual statement of their claim showing that they are entitled to relief. In addition, Tenn. Code Ann. § 29-26-115(a) (Supp. 2002) requires plaintiffs asserting a medical malpractice claim to allege that the physician failed to act with ordinary and reasonable care in accordance with the applicable standard of professional practice and that as a proximate result, the plaintiff suffered injuries that would not otherwise have occurred. A patient's subjective belief that he or she was misdiagnosed is not a sufficient basis for a malpractice claim. As the Louisiana Court of Appeals has pointed out:

> Diagnostic error by a physician is not malpractice per se. Diagnosis is an act of professional judgment and, in case of misdiagnosis, malpractice exists only if it results from the physician's failure to exercise the standard or degree of care in diagnosing which would have been exercised by members of his profession in good standing in his locality under similar circumstances.

*Frasier v. Department of Mental Health and Human Res.*, 500 So. 2d 858, 862 (La. Ct. App. 1986).

Even with the most liberal construction, Mr. Cavnar's complaint in the Claims Commission does not articulate an action for medical malpractice. While he alleges that a psychiatrist diagnosed him with paranoid schizophrenia, he does not allege that the psychiatrist breached the applicable standard of professional practice. Indeed, Mr. Cavnar's claim makes no mention of any standard of professional practice. The essence of Mr. Cavnar's claim is that he disagrees with the diagnosis. A patient's disagreement with a physician's diagnosis is not enough standing alone to state a claim for medical malpractice.[3]

As for Mr. Cavnar's request that the Commission order MTMHI to change his medical records, we agree with the State that the Commission's jurisdiction is statutorily limited to resolving monetary claims. The relief Mr. Cavnar seeks is, in practical effect, a mandatory injunction. The Commission lacks authority to issue mandatory injunctions against the State. *Burchfield v. State*, 774 S.W.2d 178, 184 (Tenn. Ct. App. 1988). For that reason, the Commission properly dismissed the medical malpractice portion of Mr. Cavnar's claim.

---

[3] It does not appear to us that MTMHI officially diagnosed Mr. Cavnar as having paranoid schizophrenia. Mr. Cavnar attached to his complaint a copy of his discharge summary from MTMHI. That medical record shows that while at some point MTMHI personnel may have diagnosed Mr. Cavnar as suffering from "Schizoaffective Disorder, bipolar type," by the time of his discharge that tentative diagnosis had been downgraded to merely "Bipolar I Disorder." As for that diagnosis, Mr. Cavnar's alleges that he consulted another physician following his discharge from MTMHI and attached a letter from this physician to his claim. The physician's letter states that the signs and symptoms contained on the MTMHI discharge summary are consistent with Mr. Cavnar's final Axis I diagnosis of "Bipolar I disorder, manic with psychotic features."

# V.
## THE INFLICTION OF EMOTIONAL DISTRESS CLAIM

The remaining allegations in Mr. Cavnar's claim are that the MTMHI employees inflicted emotional distress upon his wife and children. To the extent that this portion of the claim is based on intentional conduct by MTMHI employees, the state has not, as we have already pointed out, consented to be liable for their wrongful intentional acts. Tenn. Code Ann. § 9-8-307(d); *Shell v. State*, 893 S.W.2d at 421. Accordingly, a claim filed with the Commission seeking damages for intentional infliction of emotional distress fails to state a claim upon which relief can be granted.

Negligent infliction of emotional distress is, however, a separate and distinct tort over which the Commission has subject matter jurisdiction. However, Mr. Cavnar's claim still fails to state a claim upon which relief can be granted because he lacks standing to assert it. Actions for damages caused by tortious conduct ordinarily must be filed by the injured person. Except for a few exceptional instances, one person ordinarily cannot sue individually for another's injuries. *Millsaps v. Crofts*, 159 Tenn. 582, 585, 21 S.W.2d 389, 390 (1929); *accord Loucks v. Albuquerque Nat'l Bank*, 418 P.2d 191, 199 (N.M. 1966). Mr. Cavnar, in his individual capacity, lacks standing to assert an independent tort claim belonging to his wife and children. For that reason, the Commissioner's dismissal of his claim based on the alleged infliction of emotional distress was proper.

# VI.

We affirm the order dismissing Mr. Cavnar's claim and remand the matter to the Commission for whatever further proceedings may be required. We tax the costs of this appeal to Quentin Cavnar for which execution, if necessary, may issue.

 

 

_____
WILLIAM C. KOCH, JR., JUDGE