378 So.2d 1064 (1979)
Bufford HAND, Plaintiff-Appellant,
v.
Johnny REEVES, d/b/a Dixie Self Storage, Defendant-Appellee.
No. 13990.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1979.
Writ Refused February 8, 1980.
*1065 LaCroix & McKeithen by Leslie L. LaCroix, Jr., Monroe, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for defendant-appellee.
Before PRICE, HALL and JONES, JJ.
JONES, Judge.
Plaintiff, Bufford Hand, appeals a judgment in favor of defendant, Johnny Reeves, d/b/a Dixie Self Storage, denying him workmen's compensation benefits for an injury allegedly sustained while plaintiff was employed by defendant.
Plaintiff was hired by defendant as a general maintenance man and commenced work on May 22, 1978. On his first day of work plaintiff and defendant traveled from Monroe, La. to Clinton, Miss. where plaintiff's duties consisted primarily of knocking down cement form boards and loading them upon a truck. Many of the boards lifted by plaintiff weighed 40-50 pounds. In the afternoon of the second day of plaintiff's employment (May 23, 1978) plaintiff allegedly heard his back "pop" while working in Clinton lifting one of the form boards. Plaintiff claims he immediately told defendant of the injury, but defendant denies hearing of the injury at this time. Plaintiff completed the day's work and drove defendant's standard-shift vehicle back to Monroe without further complaint of pain.
The following day, May 24, 1978, plaintiff reported his injury to defendant's secretary. Later the same day plaintiff went to Glenwood Hospital where he saw Dr. Greer, a neurosurgeon, whose preliminary diagnosis was a right L-5 nerve root compression.[1] Because of plaintiff's continued pain and disability, Dr. Greer performed a myelogram 2½ months later, the results of which appeared to confirm Dr. Greer's diagnosis. Plaintiff underwent surgery on October 20, 1978, 4½ months after the alleged injury. The surgery revealed a lateral bulge of the L-4 disc compressing a conjoint nerve root at the right L-5 level. The conjoint nerve root is a congenital defect[2] more susceptible to injury than a normal nerve root.
Dr. Greer testified the history of plaintiff's alleged accident related to him by plaintiff on May 24, 1978 could have caused the injury to plaintiff's back which was revealed by the surgery. The trial court found plaintiff was disabled from May 24, 1978, the day following the alleged accident, until trial date and that disability would continue for an indefinite time in the future. However, the trial court held plaintiff *1066 failed to prove by a preponderance of evidence that his back condition was either precipitated or aggravated by an employment-related accident. The trial judge observed it was more probable than not that plaintiff's injury was caused by normal nonemployment activity or by some occurrence which took place after plaintiff left work on May 23, 1978. The trial court recognized plaintiff's condition could possibly have been caused by his work for defendant, but found it was equally plausible that plaintiff's employment had no relation to his disability. The trial court's conclusion was based upon a finding that plaintiff's past life-style was such as to establish he had no respect for integrity and that he had a large number of past workmen's compensation claims for back injuries. These two factors detracted from plaintiff's credibility to the extent that his testimony alone, supported by some corroborating circumstances, was insufficient to establish a compensable accident on the day of May 23, 1978 even though the trial judge found he was disabled on May 24, 1978.
The issue on appeal is whether or not the trial court erred in holding that plaintiff failed to prove a work-related injury.
The principal assignment of error is that the trial judge was incorrect in failing to accept plaintiff's testimony, as the sole witness to his accident, as sufficient to establish the accident by a preponderance of evidence. Plaintiff is correct in his contention that if the injured employee is the sole witness to the accident, then his testimony alone, if supported by corroborating circumstances, is sufficient to constitute a preponderance of the evidence and prove the compensable accident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). However, the above principle is true only if there is:
"... absence of circumstances in the record casting suspicion on the reliability of this testimony." West at 1147.
The trial court found an abundance of circumstances throwing doubt upon the veracity of plaintiff's testimony. The following evidentiary elements were found by the trial court to detract from plaintiff's credibility and cast substantial doubt upon plaintiff's claim:
(1) defendant's emphatic denial of plaintiff's having told him of the accident or of plaintiff's having manifested external signs of pain on May 23, 1978 while unloading cinder blocks subsequent to the alleged injury (plaintiff testified he could not bend to unload the blocks but had to do this job in a stiff-upright manner);
(2) plaintiff's driving the standard-shift vehicle back to Monroe, a two-hour drive, without complaint or manifestation of pain;
(3) plaintiff's six prior workmen's compensation claimstwo of which he failed to reveal until cross-examined about them, and five of which were based upon back injuries, five of them unwitnessed and most of which were not reported to supervisors or fellow employees;
(4) three of the persons with whom plaintiff spent most of his time just before and for several months after May 22, 1978 denied having any knowledge of any accident or injury to plaintiff or having been told of any by him, or observing any difference in his general and apparently chronic complaints about his bad back or in his activities and physical movements after the date of the alleged accident as compared to previously;
(5) the testimony of three witnesses who stated plaintiff made monetary offers to them in an attempt to secure their testimony to corroborate his workmen's compensation claim;
(6) plaintiff's acknowledgement of several criminal convictions involving moral turpitude resulting in his serving time in the penitentiary; and
(7) the surgery performed by Dr. Greer in October, 1977 as a result of the alleged accident at Adams Industries, resulted in removal of the major portion of the disc at the same level explored in the instant case. Although the defect observed and removed then was on the left side and was consistent with prior left-sided complaints, the right side was not explored or *1067 viewed by the surgeon in the previous surgery. The doctor's testimony as a whole reveals that scar tissue and other internal developments[3] or any number of accumulations of non-work-related traumas could have caused plaintiff's problems just as well as the specific events plaintiff described here, and that the basic problem could have originated at any time prior to the last surgery.
We find these factual findings of the trial judge are supported by the evidence. He had an opportunity to see and hear the witnesses testify and evaluate their credibility, and his factual determinations are entitled to great weight. These factual observations of the trial judge provide a substantial evidentiary basis for the trial judge's conclusion that plaintiff failed to prove his alleged compensable accident by a preponderance of evidence.
Plaintiff's claim to a great extent depends upon his testimony being more credible than defendant's testimony in regard to the accident. There is no evidence in the record tending to detract from defendant's credibility. Plaintiff contends he was working near defendant when he hurt his back and he told defendant of the accident shortly after it occurred. He also contends all the work performed by him subsequent to the accident was performed without bending and in a manner that obviously manifested his discomfort. Defendant denied plaintiff told him of the accident and further denied plaintiff's work was performed in a manner that indicated plaintiff was in pain.
As noted by the trial judge, plaintiff's past life-style revealed that he was guilty of numerous crimes which he would not have committed if he had been an honest and truthful person. His life-style as otherwise established in the record reflected an absence of reliability. He had numerous convictions resulting from his excessive use of alcohol, and he was generally unstable.
Plaintiff's credibility is also substantially detracted from because of his numerous workmen's compensation claims. When a plaintiff has had several prior injuries to the same part of his body and has had considerable experience in making workmen's compensation claims, the court will look with great suspicion on the asserted claim and will examine that claim with particular care. Chance v. American Mutual Liability Insurance Company, 92 So.2d 493 (La.App. 1st Cir. 1957); Eldridge v. Manufacturers Cas. Ins. Co., 65 So.2d 663 (La.App. 1st Cir. 1953); Weaver v. Mansfield Hardwood Lumber Co., 4 So.2d 781 (La.App. 2d Cir. 1941); Card v. Southern Builders, Inc., 117 So.2d 675 (La.App. 2d Cir. 1960); Sinegal v. Travelers Insurance Company, 319 So.2d 866 (La.App. 3d Cir. 1975).
It is significant to observe that of plaintiff's six revealed prior workmen's compensation claims five of them were based upon back injuries, one of them occurring in 1975, one in 1976, and one in 1977, the last one of which he had settled only a few months before the injury upon which this suit is based and upon which last compensable injury he was released from the doctor less than seven weeks at the time the injury here sued upon occurred.
The circumstances just discussed are among the more important ones here involved which justify the trial judge in refusing to believe plaintiff's testimony regarding the occurrence of the otherwise unwitnessed compensable accident.
The case here presented is substantially different from those cited by plaintiff wherein the testimony of the plaintiff as the sole witness to his accident was construed to constitute proof of the accident by a preponderance of the evidence. In West, supra, there were no substantial reasons to justify the trial court's failure to accept the uncontradicted and unsuspicious testimony *1068 of the plaintiff as sufficient evidence to prove her compensable accident by a preponderance of the evidence. In West the supreme court reversed the trial court and awarded plaintiff compensation holding her testimony alone sufficient to establish her compensable accident.
Plaintiff contends that his testimony concerning his unwitnessed compensable accident is strongly supported by the corroborating circumstances. These corroborating circumstances are as follows:
(1) Plaintiff was released from medical care for his prior back surgery on April 3, 1978 and advised by his doctor that he was capable of returning to work, and plaintiff had no other job from the time of his release by the doctor until the time he went to work for defendant herein;
(2) His brother-in-law testified plaintiff was having no apparent physical problems on the day he went to work for defendant and following his second day of work he was bent over and could hardly move around and on this day plaintiff related to his brother-in-law the history of his compensable accident;
(3) Plaintiff admittedly reported this accident to defendant's secretary on May 24, 1978, the day following its alleged occurrence;
(4) That plaintiff went to his physician on the day following the alleged accident and his physician found him to be disabled on this date and further expressed the opinion that in the condition which he found plaintiff on May 24th, that plaintiff could not have performed the two days work which he admittedly performed satisfactorily to defendant; and
(5) That it was established by plaintiff's neurosurgeon, Dr. Greer, that plaintiff's disc pathology was on the right side of the spine at the fifth lumbar level, whereas his earlier surgery had been performed on the left side at this level. The surgery performed in October, 1978 confirmed Dr. Greer's diagnosis that the pathology was in a different area from that operated on approximately a year earlier.
The occurrence of the above circumstances are indeed persuasive and are corroborative of the plaintiff's related history of a compensable accident. We note, however, that plaintiff's physician testified that disc pathology such as found in plaintiff's back may be asymptomatic on one day and painful and disabling on the next day without any intervening accident. This medical observation is corroborated by a review of plaintiff's medical history during the period following his initial examination of May 24, 1978 and his surgery of October 1978 during which period plaintiff, from time to time, had less painful symptoms and discomfort from his back pathology than he did at other times.
Under these circumstances the plaintiff's back pathology found by Dr. Greer upon examination on May 24, 1978 could have well existed at the time he commenced his employment for defendant and could have become symptomatic following the completion of his work on May 23, 1978, all without the occurrence of a compensable accident upon the job.
The trial judge in his very well prepared written reasons recognized the circumstances which tended to corroborate plaintiff's testimony, but concluded that the other evidence in the case offset these favorable circumstances and that the totality of the evidence failed to prove plaintiff's compensable accident by a preponderance of the evidence. As earlier pointed out there is substantial evidence in the record which support the conclusions of the trial judge. The trial judge's determination is neither manifestly erroneous nor clearly wrong, and we may not disturb it. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979).
Judgment is AFFIRMED at appellant's cost.
NOTES
[1] On October 6, 1977 Dr. Greer had performed disc surgery upon plaintiff and relieved nerve root pressure at L-4 and L-5 on the left. Plaintiff had been released by Dr. Greer to return to work following this surgery on April 3, 1978, some seven weeks prior to his employment by defendant.
[2] It consisted of two nerve roots exiting the spine through the foramen at L-5 whereas in normal backs there is but one nerve root exiting the spine through the foramen of each vertebra. Here the nerve root which would normally have exited at L-4 went out at L-5 along with the nerve root which would normally have exited at L-5.
[3] The trial judge's conclusion that the doctor's testimony as a whole revealed that scar tissue and other internal developments could have brought about the problems discovered in the surgery of October 1978, is not clearly revealed in the doctor's testimony, though it seems to be alluded to and probably this conclusion of the trial judge is justified based upon his observation of the medical witness as the medical testimony in this area was elicited.