650 So.2d 450 (1995)
Carolyn SMITH, et al., Plaintiffs-Appellants,
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH & HOSPITALS, Defendant-Appellee.
No. 94-871.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1995.
Writ Denied April 28, 1995.
*451 Joseph Texada Dalrymple, Alexandria, for Carolyn Smith Etc.
Robert S. Leake, Asst. Atty. Gen., Robert W. Stratton, Baton Rouge, for State of La., Through Dept. Health & Hosp.
Before KNOLL, SAUNDERS and AMY, JJ.
SAUNDERS, Judge.
In this wrongful death action, survivors allege that decedent's death was caused by the medical malpractice of the emergency room physician on duty at Huey P. Long Hospital on December 13, 1988. The trial court concluded that plaintiff failed to show by a preponderance of the evidence that the physician deviated from the applicable standard of care. The record reveals no manifest error. Accordingly, we affirm.

FACTS
Plaintiffs are Germaine, Kendrick and Tamekka Smith, decedent's children, who attribute the wrongful death of their father, Carroll D. Smith, on December 13, 1988, to the wrongful diagnosis of Dr. Lachlan Noyes, an emergency room physician employed by the state of Louisiana, who was on duty at Huey P. Long Memorial Hospital in Pineville, Louisiana, in the early morning of December 13, 1988. They argue that Carroll Smith's bacterial pneumonia should have been diagnosed and that had it been properly diagnosed, he would not have died from its continued progression. Defendants, on the other hand, maintain that decedent presented Dr. Noyes with no symptoms suggestive of bacterial infection and that, even if he had, it would have made no difference in the end due to decedent's severely compromised immune system.
Decedent had been paid after finishing work Saturday, after which he and his long-time companion drank alcoholic beverages, as was customary after every pay day. According to Carolyn Smith, his common law wife, decedent did not indicate that he was feeling poorly until Sunday, although in hindsight she believed that he was probably already sick Saturday because he was unable to drink as much beer as usual. (That Sunday morning *452 Carolyn Smith, unable to find her daughter's hair comb, sent decedent to her sister's house to get one. His complaints began upon his return.) In fact, Carolyn Smith thought decedent had only a typical cold until Monday, when he indicated that he was too sick to go to work, which was uncommon for him. That day, according to Ms. Smith, decedent was taking deep breaths and "was spittin' up a lot of green phlegm in the trash can in the room" and had a high fever.
About 1:15 a.m. on the morning of Tuesday, December 13, decedent woke up and indicated his immediate desire to go to the doctor. Ms. Smith drove decedent to the hospital. According to her, decedent became tired in the short distance between the point where he was dropped off and a stool where he was required to sit for 10 or 15 minutes before being evaluated by an orderly.
When an orderly or nurse asked decedent about his symptoms, decedent spoke only of back pains; according to Ms. Smith, she additionally told the medical staff about decedent's difficulty in breathing.
Decedent was eventually seen by the alleged tortfeasor, Dr. Nachlan Noyes, who staffed the emergency room that evening. According to Ms. Smith, when Dr. Noyes approached, decedent again described his symptoms, this time including his breathing complaints. The doctor listened to decedent's chest with a stethoscope, then asked decedent whether he smoked or drank. Decedent answered affirmatively in both instances. Dr. Noyes heard nothing with the stethoscope which he believed required additional testing. After taking decedent's history, Dr. Noyes told Ms. Smith that decedent had symptoms of a flu and should go home and take medication for that illness. According to Ms. Smith, she pointedly asked the doctor whether the doctor should take an X-ray.
Upon his discharge, decedent was given flu medication. On their way home, they stopped at an all-night convenience store to purchase more in compliance with the doctor's orders.
Later that evening, decedent began to hallucinate. Ms. Smith was concerned, but attributed decedent's symptoms to a passing fever. The next morning, Ms. Smith gave decedent more liquid flu medication and brought their daughter to the health clinic. Decedent complied with her instructions that he take two aspirin equivalents.
When Ms. Smith returned, decedent indicated that he was feeling better. Later, Ms. Smith left the couple's sleeping daughter in bed with decedent to go outside and, while outside, heard decedent fall loudly to the bathroom floor inside. Mr. Smith would never regain consciousness.

FIRST ASSIGNED ERROR
From the record, it would seem clear that the presence of green sputum would tend to suggest a bacterial infection rather than a viral one. Bacterial pneumonia is apparently far more serious than viral pneumonia. Appellants' first assigned error urges manifest error. Through it decedent's survivors argue that the attending physician was placed on notice of the presence of green sputum, and Dr. Noyes was negligent in failing to learn of the green sputum and in failing to order X-rays and other tests to confirm or reject the possibility. They maintain that the trial court legally erred in siding with the attending physician's negative testimony from refreshed memory that decedent presented with no life-threatening symptoms, over Ms. Smith's positive testimony to the contrary based on her memory.
Thus, the threshold question is whether Dr. Noyes in fact had reason to know of the presence of green sputum. If he did not, then the premise of appellants' first argument would be lacking and, with it, the conclusion they wish us to draw, that Dr. Noyes negligently failed to order X-rays and possible other tests.
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the *453 appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La. 1978); A. Tate, `Manifest Error' Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneous clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
"When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir. 1983), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La. 1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (La.App. 1st Cir.1983), citing McDonald v. Book, 215 So.2d 394 (La. App. 3d Cir.1968), overruled on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3d Cir.1976). Cf. Anderson, supra [470 U.S.], at 575, 105 S.Ct. at 1512; Schexnider v. McDermott International Inc., 868 F.2d 717, 720 (5th Cir.1989); Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752, 770 (5th Cir.1989); U.S. v. Hibernia National Bank, 841 F.2d 592, 595 (5th Cir.1988); Hanson v. Veterans Administration, 800 F.2d 1381, 1388 (5th Cir. 1986)."
(Footnote omitted.)
Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989).
*454 None of the factors are present which would lead us to disregard the factfinder's findings of fact. Rather, we find the record equivocal. At the outset, we observe that the record does not disclose that Dr. Noyes ever actually saw such symptoms himself; indeed, not even Ms. Smith contends that decedent produced green sputum in Dr. Noyes' presence.[1] According to appellants, Ms. Smith told Dr. Noyes of these symptoms and he ignored them. Dr. Noyes denied this contention. Under the circumstances, we cannot say that the trial court erred in its credibility assessment.
In support of the factual conclusion they would have us draw, appellants argue that the trial court erred "in rejecting the positive testimony of Carolyn Smith with regard to the presence of green sputum and the communication of said fact to Dr. Noyes in favor of Dr. Noyes [sic] assumption that he was unaware of green sputum because no indication was made of same in the medical records with which he refreshed his memory, and also in accepting the doctor's `assumption' that he rapped on decedent's chest (percussion auscultation) when Carolyn Smith swore he did not."
In support of their position, appellants cite Maroney v. Physicians and Surgeons Hosp., 626 So.2d 833, 834 (La.App. 2d Cir.1993), writ denied, 634 So.2d 376 (La.1994). Indeed, this does appear to be exactly what Maroney suggests:
"Maroney overlooks, however, that the evidentiary rule requiring a trier of fact to give more weight to positive testimony than to negative testimony `only applies when a witness'[s] credibility is not at issue.' Dunham v. Dunham, 467 So.2d 555, 559 (La.App. 1st Cir.1985), writ denied.
"See also and compare West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La. 1979) and Hand v. Reeves, 378 So.2d 1064 (La.App. 2d Cir.1979), writ denied. In those cases, the principle that a worker's compensation claimant's positive testimony about an unwitnessed accident, if supported by corroborating circumstances, is sufficient to prove the claim, was noted to apply only in the `absence of circumstances in the record casting suspicion on the reliability of [the plaintiff's] testimony.' West, at p. 1147; Hand, at p. 1066; our brackets."
Maroney, 626 So.2d at 834.[2]
In this case, as in Maroney, the credibility of the witnesses was at issue. Additionally, there are circumstances casting doubt on the reliability of Ms. Smith's testimony, which was not only uncorroborated, but contradicted by the only other eyewitness, as well as by significant reconstructive expert testimony. Indeed, there was expert testimony to *455 the effect that had decedent produced green phlegm, his tracheobronchial tree would have been congested, not clear as reported on his autopsy conducted only a few hours after his death. Thus, plaintiffs' reliance on Maroney to controvert the findings of the trial court is misplaced.
Here, we find no manifest error in the trial court's finding of no negligence. LSA-C.E. art. 612 explicitly permits testimony which springs from refreshed memory. The trial court listened to the testimony presented by all of the witnesses, including the frank admission by the doctor that his recollection had been refreshed from medical reports, and concluded from its firsthand observations all of the witnesses' demeanor that the doctor's testimony was more credible. The resolution of conflicting evidence is to be made by the trial court.

SECOND ASSIGNED ERROR
Second, appellants argue that the court erred in determining that no detectible bacterial infection was present in decedent's lungs solely because Dr. Noyes failed to detect and note same. They argue that the weight and condition of decedent's lungs at the time of his death and autopsy ruled out this possibility.
Having reviewed the record, we are not persuaded that the trial court's finding on this issue was clearly wrong. Dr. Noyes testified that he heard no untoward sounds when he conducted the examination. His recollection, accepted by the trial court, was supported by Drs. Mandry and D'Autremont, two emergency room physicians called to testify as experts. These doctors were of the opinion that the condition of decedent's lung after his demise was not conclusive on the subject. Indeed it was their opinion that it was the compromised nature of decedent's immune system that permitted such a rapid acceleration of decedent's illness and resulted in the lung's post-mortem condition.
Thus, we cannot say the trial court clearly erred.

THIRD ASSIGNED ERROR
In their third assigned error, appellants maintain that the trial court applied the wrong burden of proof. In their view, the trial court could not possibly have applied the proper standard in light of the outcome of the case.
Appellants correctly observe that they only had to make showings of malpractice and of causation by a preponderance of the evidence.
"In a medical malpractice action against a physician, the plaintiff carries a two-fold burden of proof. The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained. LSA-R.S. 9:2794; Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988); Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 723 (La.1986). Resolution of each of these inquires are determinations of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La., 1991); Smith, 523 So.2d at 822; Rosell v. ESCO, 549 So.2d 840 (La.1989); Hastings, 498 So.2d at 720."
Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1276 (La.1991).
Nonetheless, based on our review of the record, we find that the trial court applied the proper burden and correctly concluded that plaintiffs failed to prove malpractice by a preponderance of the evidence.

FOURTH ASSIGNED ERROR
Finally, appellants maintain that the trial court applied the wrong standard of care applicable to this case.
"Louisiana jurisprudence has held that expert witnesses who are members of the medical profession are necessary sources of proof in medical malpractice actions to determine whether the defendant doctor possessed the requisite degree of skill and knowledge, or failed to exercise reasonable *456 care and diligence. Frasier v. Department of HHR, 500 So.2d 858, 861 (La.App. 1st Cir.1986). The determination of an expert's credibility is also a factual question subject to the manifestly erroneous/clearly wrong standard of review. See, e.g., Anthony v. Hospital Service District No. 1, 477 So.2d 1180, 1184 (La.App. 1st Cir. 1985); Rosell, 549 So.2d at 844."
Martin, at 1275.
On appeal, plaintiffs suggest that the trial court completely misunderstood their expert's testimony. They argue that "the [i]mport of Dr. Weiss' testimony is not to ignore positive clinical findings but is more to suggest that the absence of one clinical finding, i.e., chest sounds, should not be accepted at face value in the presence of other clinical manifestations such as a cough productive of green sputum." Additionally, they candidly admit that although some possibility exists that the X-ray, even if ordered, would not have shown the telltale lung consolidation, still it probably would have, and this probability alone sufficed to carry the burden.
We have thoroughly reviewed the record and find no support for appellants' position. In this battle of the experts, plaintiffs' expert, Dr. Gary Weiss, offered his opinion that Dr. Noyes should have ordered a chest X-ray before discharging decedent. Had he done so, according to plaintiffs, decedent's diagnosis would have been correct and his illness treated. Defendant's expert testimony, on the other hand, suggested that such x-rays would have been called for only had decedent's chest soundings conducted by Dr. Noyes been productive. In the end, the trial court found defendant's position on the question more credible, and we find no clear error in this finding.
Both Dr. Noyes and his expert emergency medicine physician, Dr. Sarah D'Autremont, a member of the medical review panel that unanimously ruled in defendant's favor, maintained that X-rays and other tests are indicated only if questions remain following a patient's medical history and physical examination. So did Dr. Mandry. None of these physicians found anything alarming in decedent's medical history or vital signs, and Dr. D'Autremont further noted that a patient with the bacterial illness that took decedent's life would be expected to come in by ambulance or, at a minimum, by wheelchair. Dr. Mandry also testified that a diagnosis of upper respiratory infection is not a sufficient basis for performing chest X-rays or other tests; in fact, such X-rays would virtually certainly have been clear.
Given the foregoing and the trial court's ability to witness firsthand the witness's demeanor, we find no clear error in the trial court's acceptance of Dr. Noyes' position that his methodology was not substandard. Nor is its conclusion: If the party bearing the burden of proof fails to satisfy his burden by the requisite preponderance, his case fails to outweigh his adversary and he necessarily loses. Miller v. Leonard, 588 So.2d 79 (La.1991); Glenn v. State Farm Mut. Auto. Ins., 617 So.2d 176 (La.App. 3d Cir.1993).

DECREE
Having found no error in the trial court's findings of fact or applications of law, the judgment of the trial court is affirmed, at plaintiffs' costs.
AFFIRMED.
NOTES
[1] Ms. Smith testified that the decedent produced green phlegm in an Emerson basin Ms. Smith obtained from a nurse while waiting to visit with the emergency room doctor. Decedent threw the basin in the trash when his name was called to see the doctor.
[2] Moreover, we observe that the language quoted from Dunham above, while accurate, is no more than dicta, for in Dunham the court specifically refused to apply the general rule that the trier of fact should accord greater weight to affirmative testimony than to negative testimony.

"In any event, we do not think Tom Slay and West apply in this case. The trial judge specifically based his findings on a credibility evaluation of the witnesses. He stated, `Specifically, this court must evaluate the testimony that has come to this court. Suffice it to say not everybody can be believed. The testimony is in conflict.' His credibility evaluations are entitled to great weight on appeal, and will not be disturbed unless they are unreasonable. Despite her tedious and exhaustive review of the testimony in this case, the defendant has not shown us how those evaluations are unreasonable. This case amounts to nothing more than a swearing contest between plaintiff and defendant. We cannot say that the trial judge was unreasonable in choosing to believe the plaintiff's version of the agreement rather than the defendant's. We did not see or hear the witnesses testify at trial and therefore should not replace his evaluation with ours."
(Emphasis added.)
Dunham, supra, 467 So.2d at 559. As in Dunham, the disputed testimony here too amounts to no more than a swearing contest between Ms. Smith and Dr. Noyes. Additionally, we observe that Maroney affirmed the trial court's judgment rejecting medical malpractice claims.
And in West, supra, while it is true that the supreme court found error in the lower court's rejection of plaintiff's uncontradicted testimony, the court specifically observed that plaintiff's testimony was "corroborated by the circumstances and the medical testimony reflected by the record." Id., at 1150-1151.