799 So.2d 630 (2001)
Roosevelt COLLINS and Josephine Collins, Plaintiffs-Appellees,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 35,172-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*631 Casten & Pearce, by Alan T. Seabaugh, Shreveport, Counsel for Appellant.
Jack H. Kaplan, Shreveport, Counsel for Appellees.
Before GASKINS, KOSTELKA & DREW, JJ.
GASKINS, J.
The City of Shreveport appeals from a trial court judgment in favor of homeowners Roosevelt and Josephine Collins. The City asserts that the court erred in finding that the Collins' residence flooded as a result of the City's failure to maintain a nearby drainage culvert and in awarding general damages. We affirm the trial court judgment.

FACTS
Mr. and Mrs. Collins reside on West Gary Street in Shreveport. A drainage box and culvert are located in front of their home. According to the Collins couple, they repeatedly complained to the City about its poor maintenance of the culvert. On January 21, 1998, their home was flooded during a heavy rainfall. Their carpet was ruined; also, the floor and some pieces of furniture were damaged.
In September 1998, Mr. and Mrs. Collins filed suit against the City. They asserted that the flooding of their home was the result of debris, trash and tree limbs being allowed to accumulate in the drainage culvert, thereby causing water to back up.
In its answer, the City asserted that the plaintiffs' home was damaged as a result of being built below the street grade. It also *632 pled applicability of La. R.S. 9:2800, which limits liability for public bodies.
A bench trial on this matter was held on August 17, 2000. Mr. Collins testified that he complained to the City about the drainage numerous times prior to the flooding. The parties stipulated that Mrs. Collins' testimony would be substantially the same as that of her husband. Also testifying for the plaintiffs were Melvin Douglas, a contractor who estimated the house repairs at $10,000; Larry McClain, an employee at a carpet store who testified that replacing the carpet would cost about $3,500; Isaiah Gandy, a neighbor of the Collins family who testified that his house has flooded twice; and Lloyd Blackshire, Jr., a former next-door neighbor who witnessed the drain fill up and cause water to back up into his yard and driveway.
At the conclusion of the plaintiffs' case, the City moved for involuntary dismissal. The motion was denied. The City then presented the testimony of Ernie Negrete, its assistant superintendent of streets and drainage. As custodian of the records for his department, he testified that Mr. Collins had made complaints about other problems prior to the January 21, 1998 incident but none of them pertained to drainage. According to the City's records, the first complaint about drainage was dated February 18, 1998. Six days after the complaint, the City cleaned out the drainage box. Also testifying on behalf of the City was Ali Mustapha, an assistant city engineer for the Department of Operational Services in charge of drainage, flood plan management and storm water control.
At the conclusion of trial, the trial court found the City liable. It found that the drain in front of the plaintiffs' house became clogged and their home flooded as a result. The court further held that the City had actual notice under La. R.S. 9:2800. It awarded the plaintiffs actual damages of $9,627 and general damages of $7,500.
The City appeals.

LIABILITY

Law
Our review of the trial court's factual findings are governed by the manifest error/clearly wrong standard of review. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are more reasonable. Stobart v. State, supra. Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are, in fact, reasonable. Lewis v. State, Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that, had it been sitting as a trier of fact, it would have ruled differently. If there are two permissible views of the evidence, the factfinder's choice between them can virtually never be manifestly erroneous or clearly wrong. Lewis, supra.
La. C.C. art. 2317 states:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
*633 As to public entities like the City, La. R.S. 9:2800 provides in relevant part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

C. Constructive notice shall mean the existence of facts which infer actual knowledge. [Emphasis added.]

Discussion
The City contends that the trial court erred in several of its factual determinations. It asserts that the court erred in finding that the flooding was the result of a clogged drainage culvert. The City also maintains that the record does not support the trial court's finding that the City had previously cleaned out the drain in response to one of Mr. Collins' complaints.
Our review of the record shows no manifest error in the trial court's factual conclusion that the plaintiffs' home flooded as the result of the drain in front of their house becoming stopped up. The court was within its discretion in accepting the testimony of the plaintiffs that the cause of the flooding was a clogged drain and that the City had previously responded to their complaints about the obstruction of this drain. A former neighbor, Mr. Blackshire, verified that he had seen the drain back up and that it was usually covered in trash during the winter. Mr. Gandy, a current neighbor, testified that the street was prone to flooding and that he had not complained to the City because he did not think they would remedy the situation. He also testified that trash sometimes clogged the culvert and that the City had cleaned it out a few times. This testimony tended to corroborate that of the plaintiffs.
As to La. R.S. 9:2800, the City claims that the evidence was inadequate to show that the City had actual or constructive notice of the defect. In conjunction with this argument, the City also criticizes the trial court's statement in oral reasons that it was bound to give greater weight to the plaintiffs'"positive" testimony that they complained to the City, as opposed to the City's "negative" testimony that it could not find a record of those complaints.
Positive testimony on a given point must be given greater weight than negative testimony on the same point. La. R.S. 15:440. Where there are witnesses of equal credibility in direct contradiction on a fact question, the positive or affirmative testimony will be given preponderance over that which is negative. LeBlanc v. Cordaro, 378 So.2d 1027 (La.App. 2d Cir. 1979). The resolution of conflicting evidence is to be made by the trial court. Smith v. State Through Dept. of Health & Hospitals, 94-871 (La.App. 3d Cir.2/15/95), 650 So.2d 450, writ denied, 95-0693 (La.4/28/95), 653 So.2d 596.
We find no error in the trial court's application of this rule of law. Mr. Collins unequivocally testified that he complained about the drain to the City numerous times. Generally, the City would send someone to clean it out within a few days. However, prior to the flooding in January 1998, he called for several days in a row without the City taking action. This was corroborated by the stipulated testimony of Mrs. Collins. Mr. Negrete, an employee of the City, testified that he was unable *634 to discover a record of any call by Mr. Collins pertaining to the drain prior to the January 1998 flooding. However, he conceded that he was not the person who would have received the complaints, that it was possible for complaints to not be recorded, and that the records are purged within three years. The trial court, finding the plaintiffs' testimony entirely credible, ruled in their favor.
Additionally, the City argues that it was improper under La. C.E. art. 407 for the court to consider the City's "subsequent remedial measure" in cleaning the culvert after the January 1998 flooding. Review of the record reveals that the trial court properly sustained the City's objection to evidence of its subsequent remedial action being construed as an admission of liability. We discern no evidence that the trial court improperly considered such evidence in rendering its decision.
Based on this record, we conclude that the trial court's ruling on liability was reasonable. Consequently, we find no manifest error.

DAMAGES
As to damages, the City argues that the trial court erred in awarding general damages because there was no evidence in this property damage case of the property owners suffering "psychic trauma" as a result of the damage to their property.
Every incident of property damages is necessarily accompanied by some degree of worry and consternation over such things as possible financial loss, settlement of insurance claims, and discomfort or inconvenience while awaiting and undergoing the repair. The owner of the damaged property may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to a physical injury, directly resulting from the property damage. Thompson v. Simmons, 499 So.2d 517 (La.App. 2d Cir.1986), writ denied, 501 So.2d 772 (La.1987); Kemper v. Don Coleman, Jr., Builder, Inc., 31,576 (La.App.2d Cir.7/29/99), 746 So.2d 11, writs denied, 1999-2954 & 1999-2955 (La.1/7/00), 752 So.2d 861.
Inasmuch as the plaintiffs put on no evidence of "psychic" injury, the trial court's award of general damages was not appropriate as an award for mental anguish. However, we hold that it was appropriate as compensation for the inconvenience which the plaintiffs sufferedand continue to sufferas a result of the flood. Thompson, supra; Kemper, supra. The plaintiffs testified that, for financial reasons, they had not been able to remedy many of the problems caused by the flooding. This included, among other things, continuing to live for more than two years with the foul-smelling carpet ruined by the flood water that invaded their home.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed against the City.
AFFIRMED.