SUSAN M. CHEHARDY, Judge.
laThis is an automobile personal injury case in which the plaintiff seeks reversal of a jury verdict in favor of the defendant driver. We affirm, for the following reasons.
PROCEEDINGS BELOW
Lynn Waguespack filed suit on July 24, 2009, against Sentry Select Insurance Company, Frazier Trucking, Inc., and Cody King. She was joined as plaintiff by her husband, Timothy Waguespack, individually and on behalf of his minor child, Timothy Waguespack. The petition alleges that on March 19, 2009, at approximately 4:32 p.m., Lynn Waguespack was driving her 2006 Nissan Altima westbound on 1-10 near Causeway Boulevard. In the car with her were her daughter, Taylor, age 13; her son, Timothy, age 14; and her elderly aunt, Frances Catalano. Ms. Wag-uespack alleged she was stopped due to traffic congestion when, suddenly and without warning, her car was struck from the rear by a 2009 Peterbilt 18-wheeler owned by Frazier and operated by King. She alleged King fled the scene of the accident.
Ms. Waguespack alleged the accident caused painful and permanent personal injuries to her and her son. She sought damages for pain and suffering, mental anguish and distress, medical expenses, *882 loss of personal property, and loss Rof use, lost wages and/or loss of earning capacity, disability, and loss of enjoyment of life. Mr. Waguespack sought damages on behalf of his son for his son’s injuries to the back and left shin, and numerous contusions and abrasions, as well as pain and suffering, mental anguish and distress, medical expenses, and loss of enjoyment of life. On his own behalf, Mr. Waguespack sought damages for loss of consortium, loss of services, and loss of society between him and his wife.[1]
The defendants answered by admitting that Cody King was in the course and scope of his employment on the date of the accident, but denied the allegations as to the occurrence of the accident. They raised as affirmative defenses, in the event the accident occurred as alleged by the plaintiffs, that the incident was of insufficient magnitude to impart personal injuries to Lynn Waguespack or to her son and, further, that Lynn Waguespack had pre-existing conditions that were not caused, aggravated, or exacerbated by this accident or, alternatively, that she failed to mitigate her damages. In supplemental and amending answers, the defendants added as affirmative defenses comparative negligence on the part of Lynn Wagues-pack, and negligence on the part of third persons for whom the defendants are not responsible.
In the pretrial order the defendants asserted that minimal if any damage was visible on the rear of Waguespacks’ vehicle. Further, prior to the accident, Lynn Waguespack was involved in a slip-and-fall accident on December 11, 2002, from which she claimed injuries to her neck, right hip, leg and ankle, and low back pain. She was treated for those injuries, but failed to report them to all of the physicians who treated her following the accident of July 24, 2009. The defendants also contested the nature and extent of Lynn Wagues-pack’s economic damage claims.
|4The plaintiffs framed the contested issues for trial as (1) the facts surrounding the collision; (2) the extent of the plaintiffs’ injuries and disabilities; (3) the facts surrounding the plaintiffs’ past, present and future medical expenses; (4) the facts surrounding the plaintiffs’ past, present and future lost wages; (5) the defendants’ liability for negligence in causing the collision; (6) the causal connection between the collision and the resulting injuries to the plaintiffs; (7) the law related to the defendants’ negligence and fault in causing this collision.
The defendants framed the contested issues for trial as (1) whether Cody King was negligent in causing the accident; (2) whether Lynn Waguespack is comparatively at fault in causing the accident; (3) whether the accident was of sufficient force and magnitude to impart personal injuries; (4) whether Lynn Waguespack may assert a claim for lost wages between the date of the subject accident and the date of trial, because there is no documentation of her earnings prior to the accident date; (5) whether Lynn Waguespack may demonstrate a loss of future earnings or diminution of her earning capacity; (6) whether Lynn Waguespack is entitled to future medical expenses.
Prior to trial, the plaintiffs dropped the lost earnings claims. The plaintiffs also stipulated (1) that Sentry has a liability policy covering Frazier and King; (2) that King was in the course and scope of his employment, and/or on an errand and/or *883 mission for Frazier at the time of the collision.
The defendants stipulated (1) that Sentry had a liability policy that afforded coverage to Frazier and King; (2) that King was employed by and under the dispatch of Frazier; (3) that Lynn Waguespack’s 2006 Nissan Altima was driven from the scene and never repaired following the accident.
After a four-day trial, on September 1, 2011, the jury returned a verdict finding that Cody King was not negligent in this accident. In a judgment signed on | a September 14, 2011, the trial court dismissed all claims asserted by the plaintiffs against the defendants.
Subsequently the plaintiffs moved for judgment notwithstanding the verdict (“JNOV”) or for new trial. The plaintiffs argued that the jury was clearly erroneous in finding that Cody King was not at fault in causing the collision. They contended the record is replete with testimony and evidence that King rear-ended Lynn Wag-uespack’s vehicle, including the contemporaneous 911 calls placed by Ms. Wagues-pack providing a description of King’s 18-wheeler; the police report; the eyewitness testimony of Ms. Waguespack, her son, and her daughter; the expert testimony of accident reconstructionist Michael Gillen; the photographs depicting damage to the Waguespack vehicle; and Lynn Wagues-pack’s injuries. They also pointed out that the record is devoid of any testimony from King denying that he rear-ended the Wag-uespack vehicle, and he testified at trial that he may have struck her vehicle. He admitted he never saw Ms. Waguespack, but was certain she did not “cut him off.”
The plaintiffs further argued that Lynn Waguespack’s injuries were caused by the March 19, 2009 collision, that Lynn Wag-uespack should be awarded damages of $1,221,988.00, that her husband should be awarded damages of $75,000.00, and that her son should be awarded damages of $8,485.00. The plaintiffs asked the court to grant a JNOV or, alternatively, a conditional order for a new trial if the entry of JNOV is later vacated or reversed.
In opposition to the motion, the defendants argued that the jury verdict should stand. They contended the jury was not clearly erroneous in determining that Cody King was not at fault in connection with the accident on March 19, 2009; that the facts and inferences from the testimonial and documentary evidence are of such quality and weight that reasonable and fair-minded persons in the | f,exercise of impartial judgment might reach different conclusions on the subject of liability; that regardless of whether the record is replete with testimony and evidence that Cody King’s tractor-trailer rear-ended the vehicle operated by Lynn Waguespack, the credibility of the witnesses, physical evidence presented at trial, and the determination of liability remain within the sound discretion and province of the jury; that neither entry of judgment notwithstanding the verdict nor an order for new trial are appropriate; and, because entry of JNOV is not provided for under these facts, discussion of plaintiffs’ general and special damage claims is unwarranted.
The defendants asserted that the jury concluded the accident resulted from a lane change conducted by Lynn Wagues-pack, based on the testimony presented by Brian Clement, who testified as an expert in property damage, appraisal, and photography. They also argued that the jury rejected Lynn Waguespack’s explanatory trial argument that the minor property damage on her bumper cover, consisting of horizontal (lateral or side-to-side) gouge marks and scratches from the center to the left side of the bumper cover, resulted from post-contact movement of her vehicle.
*884 After a hearing the district court denied the motion for judgment notwithstanding the verdict and/or for new trial. The district court stated,
I guess what the whole thing boils down to is ... Did she move from one lane to another, or was she going straight ahead and was rear-ended through no fault of her own? I guess that’s the whole ... If you want to buy Mr. Ponder’s version, then she pulled in front of him.
I don’t think Mr. Ponder is saying that the accident didn’t occur. It is just that the jury bought his version or his theory that she moved in front of him.
[[Image here]]
Since I’ve been here for a little over five years, this is probably one of the toughest decisions I have to make. You’re asking me to go ahead and basically substitute my |7opinion for that of 11 people who ... sat here throughout this trial and heard exactly the same things that I heard and you all heard....
The plaintiffs appeal.
ASSIGNMENTS OF ERROR
The plaintiffs assert the jury erred in finding that Cody King was not negligent, when the totality of the uncontroverted positive evidence and positive testimony presented at trial establish that Mr. King rear-ended Ms. Waguespack’s vehicle in the March 19, 2009 collision.
LAW AND ANALYSIS
Factual determinations of the trier of fact will not be set aside by the reviewing court unless they are manifestly erroneous or clearly wrong in light of the entire record. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); see also, Foley v. Entergy Louisiana, Inc., 06-0983, p. 10 (La.11/29/06), 946 So.2d 144, 158.
In assessing the factfinder’s determination, an appellate court’s inquiry is whether a reasonable factual basis exists for the finding of the trier of fact and whether the finding is not clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880, 882 (La.1993). The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id.
A determination that the factual finding was reasonable precludes the reviewing court from reversing the decision of the fact trier, even though the reviewing court is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.; Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, pp. 8-9 (La.7/5/94), 639 So.2d 216, 221; Kraemer v. Joseph, 04-270, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 22, 25; Aleman v. Allstate Ins. Co., 04-948, p. 5 (La.App. 5 Cir. 1/11/05), 894 So.2d 382, 384.
|sWhere there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Desselle v. Jefferson Hosp. Dist. No. 2, 04-455, p. 4 (La.App. 5 Cir. 10/12/04), 887 So.2d 524, 528. The reason for this principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). The manifest error standard therefore demands great deference to the trier of fact because it is the trier of fact who is aware of variations in demeanor and tone of voice that bear considerably on *885 the listener’s understanding of what is stated. Rosell, supra.
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Augillard v. Gaspard, 01-1333, p. 6 (La.App. 5 Cir. 5/30/02), 820 So.2d 1177, 1180. It is only where or objective evidence so contradicts a witness’s testimony, or the testimony itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, that the court of appeal may find manifest error even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-845 (La.1989). Where such factors are not present and a factfinder’s determination is based upon a decision to credit the testimony of one or more witnesses, the decision can virtually never be manifestly erroneous or clearly wrong. Id.
Ms. Waguespack testified she was returning home from picking her daughter up from school. In the Nissan Altima sedan with her were her daughter, her son, and her elderly aunt, Frances Catala-no, who had Alzheimer’s disease. Ms. Waguespack testified she got onto 1-10 westbound at the Bonnabel entrance, where she had to merge across two entrance lanes to get into the right-hand lane of | fltravel. She said the traffic was stop- and-go, and she was travelling at five to ten miles per hour.
She testified that due to the traffic, she came to a stop between Causeway Boulevard and the Cleary Avenue underpass, when she was struck from behind by an 18-wheeler tractor trailer truck. She said it felt like the truck hit her car four or five or six times. She immediately called 911 on her cell phone. She spoke to a state police trooper and gave a description of what had happened, what the truck looked like, the appearance of the driver, and the truck’s license plate number.[2] The trooper advised her to pull off the road and go to the Clearview Shopping Center parking lot to wait for assistance.
The truck continued driving westbound after Ms. Waguespack got off the highway.
Trooper Samuel Boyd was dispatched to meet Ms. Waguespack to report on the accident. Ms. Waguespack told him her back and neck hurt, but she declined an ambulance.[3] Trooper Boyd noted in his report that Ms. Waguespack’s vehicle sustained “minor to moderate” damage. After interviewing Ms. Waguespack, the trooper left to search for the truck in the area west of the scene, to no avail.
Trooper Boyd testified he later was able to trace the license plate and determined it was registered to Frazier Trucking Company in Kentwood, Louisiana. He phoned the company and spoke to Lynn Frazier about the accident. She admitted the company had a truck that was in the Metairie area on the date of the accident, but told him the driver was out of state, but that she would have him |1flcontact Trooper Boyd when he returned. Trooper Boyd said he never heard from the driver, and he did not pursue the case further.
*886 Cody King, the driver of the truck, admitted that he was driving on I — 10 in Metairie on the date and time of the accident, as was borne out by his logbook. He testified, however, that he never saw Ms. Waguespack’s car and he was unaware of any collision. He admitted the traffic was heavy, stop-and-go, and said in heavy traffic he tries to maintain a distance between his vehicle and any forward vehicle such that he can see the brake lights of the vehicle in front. He admitted the rule is to maintain a seven-second following distance, but stated it was not feasible in congested traffic because cars constantly try to slip in front of his truck.
The visible damage to Ms. Waguespack’s Nissan Altima sedan consisted of several horizontal scratches across the rear bumper, extending from approximately the center toward the left side. By the time counsel was able to examine the defendants’ truck, months after the accident, it had been washed repeatedly and there were no signs of damage on its front bumper.
The plaintiffs’ accident reconstruction expert, Michael Gillen, testified the damage on the Altima’s rear bumper lines up with the license plate frame on the defendants’ truck. He theorized that the reason the damage is on the left side was that the car may have shifted during impact, or because the car was not squarely in front of the truck in the driving lane. Gillen never examined the vehicles directly, but only reviewed photographs of them.
In contrast, the defense’s expert property damage appraiser, Brian Clement, testified the damage on the bumper of the Altima was inconsistent with the contention that the Waguespack vehicle was struck directly from the rear. Clement also inspected the truck and found no indication of damage on its front bumper.
| nThe Waguespack children testified slightly differently. They both were in the back seat of the car and were unaware of the truck until they felt a bump. They turned and saw the grill of the truck behind the car. Both of them said they were hit several times.
Taylor Waguespack testified the bumping of the truck pushed them in a straight line and they were jerked forward repeatedly. She did not know if their car was stopped or moving when it was hit. Taylor said she was “fine” after the accident.
Timothy Jr. — “T.J.”—testified the bumping caused his mother to lose control of the car. T.J. said he hit his knee on the console and hurt his back. He later was treated by Dr. Kang for back pain for three months.
Ms. Waguespack suffered back and neck pain radiating into her shoulders, with intermittent headaches. She was initially treated by Dr. Gloria Kang for a few months for her neck pain. Eventually she underwent an MRI, which showed herniated discs at three levels. Dr. Kang referred her to a neurosurgeon, Dr. Bradley Bartholomew, who treated her conservatively at first, but eventually recommended surgery. In January 2010, she underwent two-level disc replacement and a cervical fusion with implants. She thereafter underwent a lengthy course of physical therapy. Both Dr. Kang and Dr. Bartholomew related Ms. Waguespack’s injuries to the March 19, 2009 collision.
On appeal the plaintiffs argue that they introduced positive evidence in support of their claims, while the defendants introduced no positive evidence at all in support of their defense that Mr. King was not negligent. The plaintiffs point out that Mr. King, in fact, conceded that he could have impacted Ms. Waguespack and he *887 never rebutted the presumption of his negligence.
| igThe plaintiffs cite the principle that “[p]ositive testimony on a given point must be given greater weight than negative testimony on the same point.” La. R.S. 15:440; Collins v. City of Shreveport, 35,-172, p. 5 (La.App. 2 Cir. 10/31/01), 799 So.2d 630, 633; Kerrigan v. Imperial Fire & Cas. Ins. Co., 99-603, p. 11 (La.App. 3 Cir. 11/3/99), 748 So.2d 67, 75, writ denied, 1999-3410 (La.2/4/00), 754 So.2d 236, and writ not considered, 1999-3569 (La.2/4/00), 754 So.2d 219.
In opposition, the defendants point out that this rule is premised upon the evidence or testimony of the opposing sides being of equal credibility. While as a general rule positive evidence is superior to negative evidence, the resolution of conflicting evidence is still to be made by the trial court. Smith v. State Through Dept. of Health & Hospitals, 94-871, p. 8 (La. App. 3 Cir.2/15/95), 650 So.2d 450, 455, unit denied, 95-0693 (La.4/28/95), 653 So.2d 596. In other words, the trier of fact still has the prerogative to decide what evidence, positive or negative, it accepts on a given issue of fact.
The defendants assert the rule of La. R.S. 15:440 has no application to the evidence presented at trial here. They assert they put on positive evidence on the issue of whether Mr. King was even involved in the accident. He testified he knew of no accident, that based upon the claimed time of the accident, and his records, he was in the general area of the Orleans-Jefferson Parish line. He likewise testified he operated his vehicle a distance behind forward vehicles such that he could see their rear taillights. The defendants also presented the expert testimony of Brian Clement that the Waguespacks were involved in a lane-change accident, not a rear-end accident. They argue,
This positive testimony and physical evidence, if accepted by the jury, supported a finding King was not involved in Appellants’ accident.
half the jury decided King was involved in the accident, but not negligent, Appellees presented positive evidence. Again, through testimony and physical evidence of gouge marks on the bumper, Clement opined the accident the Appellants were involved in occurred when Mrs. Waguespack changed lanes enter-, ing the right travel lane of 1-10. Appellants’ expert opinion was premised upon the testimony of Mrs. Waguespack that she was stopped when rear ended. Ap-pellees showed, exactly how the accident occurred was in dispute, as Mrs. Wag-uespack had reported to one of her doctors that the accident occurred when her vehicle was moving. Acceptance of Clement’s expert opinion or rejection of Appellants’ expert opinion based upon a false premise clearly would be supported by the evidence.
The defendants argue further that reliance on the positive evidence rule assumes that the jury found Ms. Waguespack equally credible as Mr. King. However, the jury also heard evidence that Ms. Waguespack denied having prior neck complaints in giving her medical history to her doctors, when she in fact had neck complaints following a 2002 slip-and-fall accident, and the jury also learned she had misrepresented her earnings history in information she gave to Bobby Roberts, an expert vocational evaluation specialist who tested her to see if she is able to work.
The jury returned a verdict finding that Mr. King was not negligent in the accident. We find this verdict may reasonably be interpreted as the jury’s determination that the plaintiffs failed to meet their burden of proof that Mr. King was even involved in their accident or, alternatively, *888 that the jury believed the accident resulted from a lane-change maneuver by Ms. Wag-uespack.
Although Mr. King acknowledged he was in the general area, he testified that he had no knowledge of the accident. He was not stopped at the scene or followed by Ms. Waguespack, so as to conclusively establish his involvement in the accident. Examination of his vehicle did not reveal evidence of involvement in the accident. The only evidence the jury had to link Mr. King to the accident was 114the testimony of Ms. Waguespack and her family members, which contained inconsistencies. Ms. Waguespack has presented different versions of the accident at different times. Her credibility was impeached on her medical and economic history, as reviewed below.
Alternatively, if the jury concluded that Mr. King was involved, it was instructed relative to the defendants’ alternative contention that a lane change maneuver at Ms. Waguespack’s entry point onto 1-10 westbound from the Bonnabel Boulevard access lanes was the cause-in-fact of this accident, based upon the physical evidence and inconsistencies in Ms. Waguespack’s version of the accident.
Although a presumption of negligence generally arises when a following motorist is involved in a rear-end collision, the following motorist may escape liability for the collision by establishing the unpredictable driving of the preceding motorist created a sudden emergency that the following motorist could not have reasonably anticipated. Brewer v. J.B. Hunt Transp., Inc., 2009-1408, p. 14 (La.3/16/10), 35 So.3d 230, 241. Equally important, the jury was empowered to determine, based upon its analysis of the testimony and physical evidence in this case, that a driver such as Waguespack, who changes lanes without first determining that the move can be completed safely and who is then struck from the rear by a following vehicle, cannot rely upon the rear-end presumption to shift the burden to the following driver.
The defendants point out further that Ms. Waguespack’s accident reconstruction expert, Michael Gillen, acknowledged Mr. King’s driving practice of stopping behind a preceding vehicle in congested driving situations where he could see the taillights of the vehicle, whether or not illuminated. Mr. King admitted his probable speed of 10-15 miles per hour in heavy traffic such as that 115which existed on March 19, 2009. As stated, he explicitly rejected the notion of being able to maintain a following distance of seven seconds, which would be the rule in over-the-road driving conditions that did not exist under these facts. He acknowledged the existence of a “blind spot” of an unknown distance over the extended hood of his Peterbilt tractor. The physical evidence reviewed below supported the reasonable conclusion the jury in this case may have made, that if the accident occurred as the plaintiffs contend, it resulted from a merging lane change.
Although we might not have decided this way had we been the trier of fact instead of the jury, we are unable to say they were clearly wrong. The factor of credibility is too great in this case to overlook. The jury’s decision was eleven to one. Clearly, reasonable minds could differ here, and they did. They were entitled to weigh the expert opinions as they wished, and to accept or discard portions of the expert opinions.
DECREE
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellants.

AFFIRMED

. The plaintiffs also alleged that Sentry is subject to penalties and attorney's fees for arbitrary and capricious refusal to comply with the provisions of its property damage coverage.

. She described the truck as golden-brown in color. The children told her the license plate number, P179256. There was a sticker that said "Grumpy” on the rear window of the truck cab, and there were spikes on the outer front wheel hubs. They described the driver as white, with short brown hair, wearing sunglasses and a tan cap with a fish on it.

. She testified at trial she had refused to go to the hospital because she had her elderly aunt with her, who had advanced Alzheimer's disease and could not be left alone. Ms. Wag-uespack's children, who were young teenagers, also were with her. Ms. Waguespack’s aunt, Ms. Catalano, died prior to trial, of causes unrelated to this accident.